Argued August 22, affirmed October 7, 1974

CLATSOP COUNTY, *Respondent, v.* MORGAN ET UX,
*Appellants.*
526 P2d 1393

*Nicholas D. Zafiratos,* Astoria, argued the cause for appellants. With him on the briefs was Stephen L. Roman, Astoria.

*Michael J. Dooney,* Deputy District Attorney, Astoria, argued the cause for respondent. With him on the brief was Frank J. Coumont, District Attorney, Astoria.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

THORNTON, J.

Defendants appeal from an order permanently enjoining them from constructing and operating a commercial amusement establishment on their property on the Sunset highway near Elsie. Plaintiff sought the order alleging that defendants were in the process of constructing a facility which would offer the follow-

ing: motorcycle, go-kart and dune buggy rides, children's motorized rides (train, bumper cars, merry-go-round, "whip," "tiltawhirl," "skat"), a slide, and picnic facilities.

Plaintiff contended, and the trial court found, that this would constitute a violation of Clatsop County Zoning Ordinance No. 66-2. The subject land is zoned A-1 (Agricultural and Forestry Zone A-1).[1]

The sole issue presented for our review is whether

---

[1] Section 3.060 of Clatsop County Zoning Ordinance No. 66-2 provides:

"Agricultural and Forestry Zone A-1. In an A-1 zone the following regulations shall apply:

"(1) Uses Permitted. In an A-1 zone the following uses and their accessory uses are permitted:

"(a) A use or conditional use permitted in an R-A zone.

"(b) Trailer house.

"(c) Mining except within 500 feet of R-1, R-2, R-3, R-4, R-A, C-1 or C-2 use zones, or any existing dwelling unit.

"(d) Activities related to processing forest, agricultural and other products derived from permitted uses where close proximity to such land use resources is required and appropriate urban industrial areas are not nearby, except when such activities are within 500 feet of R-1, R-2, R-3, R-4, R-A, C-1 or C-2 use zones, or any existing dwelling unit.

"(2) Conditional Uses Permitted. In an A-1 zone the following conditional uses and their accessory uses are permitted subject to provisions of Article 6: .

"(a) Mining within 500 feet of R-1, R-2, R-3, R-4, R-A, C-1 or C-2 use zones, or any existing dwelling unit.

"(b) Activities related to processing forest, agricultural and other products derived from permitted uses where close proximity to such land use resources is required and appropriate urban industrial areas are not nearby when such activities are within 500 feet of R-1, R-2, R-3, R-4, R-A, C-1 or C-2 use zones, or any existing dwelling unit.

"(c) Garbage dump or refuse disposal site.

"(3) Standards. In an A-1 zone the same standards as in an R-2 zone shall apply, except that there shall be no restrictions on the location of livestock."

defendants' proposed use of their land is permitted in an A-1 zone.

■ Upon an appeal from an order in a suit in equity the cause is tried anew upon the record. ORS 19.125 (3). The trial court's findings while persuasive are not binding on this court, and it is the appellate court's function to make its own independent study of the record and to arrive at its own conclusion. *Multnomah County v. Howell,* 9 Or App 374, 496 P2d 235 (1972), Sup Ct *review denied* (1973).

Defendants argue that the over-all tenor of the zoning ordinance does not preclude the type of activities they plan in an A-1 zone. We note that Section 3.060 (A-1 zone) does not expressly allow a facility of the type defendants propose, but that Section 3.070 (2) (a) (Commercial Zone C-1) does expressly allow a "commercial amusement establishment" in commercial zones, but as a conditional use only.

Defendants further argue that the ordinance expressly allows them to proceed with their proposed activities in an A-1 zone because of language found in Sections 3.050 and 3.060 (1)(a).[1]

■ A question crucial to defendants' first argument is whether their proposed activities would constitute a "commercial amusement establishment." The term "commercial amusement establishment" is not defined in Ordinance No. 66-2, nor have we found any Oregon case defining the term. The failure of a statute or ordinance to define a term used therein calls for the application of its ordinary meaning. *Arundel Supply Corp. v. Cason,* 265 Md 371, 289 A2d 585 (1972).

An examination of cases from other jurisdictions

where the same term or similar term has been judicially construed reveals the following:

In *Carpenter v. Zoning Board of Appeals of Framingham,* 352 Mass 54, 59, 223 NE2d 679, 683 (1967), the court was concerned with the meaning of the term "commercial amusement place," used in a municipal zoning ordinance which prohibited such use in a single-residence district. The court held that a swim club, even though incorporated as a nonprofit enterprise, was actually operated as a commercial enterprise within the "commercial amusement place" provision of a zoning bylaw, and was not a "recreational building and ground" within another portion of a zoning bylaw permitting such latter use in a single-residence district.

■ In *Tice v. Borough of Woodcliff Lake,* 12 NJ Super 20, 22, 78 A2d 825 (1951), the court said:

> "* * * An essential attribute of an 'amusement park' is the grouping together in one place of various amusements for pleasurable diversion * * *."

Defendants' proposed activities would, indeed, group together on their 85 acres various types of amusements for pleasurable diversion. Defendants have also acknowledged on two separate occasions the intent to build an amusement park. The defendants first acknowledged their intent in an unsuccessful application for a zone change in 1972, and defendants again acknowledged their intent to build an amusement park in the proceedings below. We have examined defendants' plans and the admitted intentions of defendants in the light of the above provisions. We conclude that defendants are proposing the construction of a commercial amusement establishment, and that same would be included within that term as used in Section 3.070 (2) (a).

■ Our next task is to determine if the construction and operation of an amusement establishment is prohibited in the A-1 zone. The same rules that aid in the interpretation of statutes are used in the interpretation of ordinances. *Local 1724B v. Bd. of Cty. Com., Lane Cty.,* 5 Or App 81, 482 P2d 764 (1971).

■ The primary rule to follow in interpreting a statute (ordinance) is to ascertain the intent of the legislative body adopting the same. *State Highway Com. v. Rawson,* 210 Or 593, 312 P2d 849 (1957).

■ It is a well established rule of construction that a statute is construed as a whole and effect must be given to the over-all policy which it is intended to promote. *Wimer v. Miller,* 235 Or 25, 383 P2d 1005 (1963). This rule is especially applicable here because we are interpreting a comprehensive zoning ordinance.

An examination of the entire ordinance discloses that the drafters expressly provided for commercial amusement establishments in Section 3.070 (2) (a). A commercial amusement establishment is merely a use, conditionally allowed, in a commercial zone (C-1, C-2). No such use is mentioned in any other portion of the ordinance. From this we conclude that the drafters intended to restrict commercial amusement establishments to commercial (C-1, C-2) zones. We base this conclusion on several factors.

The Clatsop County Planning Commission has developed a comprehensive zoning plan as required by ORS 215.050. The plan not only assigns different zones to the entire county, but also assigns specific permitted or conditional uses to each zone. An A-1 zone does not contain an express provision which encompasses the activities proposed by defendants. By expressly assign-

ing amusement park activities to commercial zones, the legislative body has restricted such activities to commercial zones only, and by necessary inference has expressed an intent that similar activities not be carried on in any other zone. *Kordick Plumbing and Heating Company v. Sarcone,* — Iowa —, 190 NW2d 115 (1971); 2A Sutherland, Statutory Construction, § 47.23 (1973).

In *Kordick* the owner of an undeveloped tract which was located in an area zoned as a heavy industrial district brought mandamus against the zoning administrator to compel issuance of a permit for the construction of a mobile home park on his land. The trial court ordered issuance of the writ and defendant appealed. The subject ordinances provided that a heavy industrial district could be used principally for any purpose except those listed for special purposes. The ordinances also provided that mobile homes would be permitted as a special use only in specifically enumerated districts and which did not include heavy industrial districts within those districts in which mobile homes were permitted. The Supreme Court of Iowa reversed the trial court and held that mobile homes could not be permitted in plaintiff's heavy industrial district either as a principal use or as a special use.

■ The existence of a comprehensive zoning plan is also important. As we stated in *Multnomah County v. Howell,* supra, owners of adjacent property covered by a comprehensive plan have a right to rely on the protection afforded by that plan. The adjacent landowners in this case have a right to expect that commercial amusement establishments will be confined to commercial zones, and not be allowed in residential, forest or agricultural zones. We agree with the trial

judge that the subject ordinance, when read as a whole, does not allow defendants' proposed activities in an A-1 zone.

Defendants' second argument is also without merit. Defendants argue that Section 3.060 (1) (a), which permits any use or conditional use permitted in Section 3.050 (Residential-Agricultural Zone R-A), expressly permits them to build an amusement facility. To support their argument defendants rely on Section 3.050 (2) (b) and (c),[2] and contend that their activities fall within the intended scope of the subsections. This contention cannot be sustained for the reasons already stated.

Affirmed.

---

[2] Section 3.050 (2) of the Ordinance provides:

"* * * * *

"(b) Open land recreation such as boating and fishing establishment and riding stable.

"(c) Resort-type residential establishment when associated with recreation or group-oriented activities on the premises.