Argued September 18, reversed October 13, reconsideration
denied December 3, petition for review denied December 16, 1975

# NAUMES OF OREGON, INC., *Petitioner, v.*
# EMPLOYMENT DIVISION (No. 75-T-15),
## *Respondent.*
541 P2d 141

*William G. Purdy,* Medford, argued the cause for petitioner. With him on the brief were Frohnmayer & Deatherage, Medford.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Foley and Thornton, Judges.

FOLEY, J.

This is an appeal by petitioner, Naumes of Ore-

gon, Inc., from a decision by a referee of the state Employment Division that petitioner is an "employer" subject to payment of taxes for unemployment insurance, as required by provisions of the Employment Division Law, ORS ch 657. Petitioner-Naumes contends that it is within the exclusionary limitations of ORS 657.045(1), (2)(d), exempting the employment of agricultural labor from the Employment Division Law.

Petitioner is an Oregon corporation owned by members of the Naumes family and engaged in the packing of fruit which is primarily grown in pear orchards it manages. The fruit packed by petitioner was grown in various Rogue River Valley orchards. Although petitioner owned none of these orchards, nine of the twelve orchards managed by it are essentially owned by members of the Naumes family and it had written leases with two of the orchards and an oral agreement with another to manage the orchards and pack the fruit. With the exception of two orchards, petitioner performed all of the necessary irrigating, spraying, cultivating, fertilizing, picking and thinning on each of the several orchards.

Petitioner charges the respective owners of the orchards only for the actual costs of its services in managing the orchards. The only profit petitioner receives is a "packing profit" from the processing of the fruit. The pears from each of the several orchards are kept separate throughout the entire packing and storage process and the proceeds from the sale of the fruit are distributed to each orchard owner according to his respective "pack out." It is undisputed that petitioner's pack consisted of more than 50 percent of the fruit from the orchards it managed.

Petitioner contends that the services performed in managing the orchards from which more than 50

percent of the fruit it packs originates renders it an "operator" of the orchards exempt from the Employment Division Law.

ORS 657.045 provides as follows:

"(1) 'Employment' does not include agricultural labor.

"(2) 'Agricultural labor' includes all services performed:

"* * * * *

"(d) In the employ of the operator or group of operators of a farm or farms (or a cooperative organization of which such operator or operators are members) in handling, planting, drying, packing, packaging, processing, freezing, grading, storing or delivering to storage or to market or to a carrier for transportation to market, in its unmanufactured state, any agricultural or horticultural commodity, but only if such operator or group of operators produced more than one-half of the commodity, as measured by volume, weight or other customary means, with respect to which such service is performed.

"* * * * *."

Subsection (4) defines "farms" to include fruit farms and orchards.

The referee concluded that the legislature did not intend to exclude from unemployment insurance coverage, services performed in a packing house when the employer does not own the orchards or have a direct proprietary interest in the orchards. In reaching his determination that petitioner was not an operator of the fruit orchards, the referee placed great weight on the supposition that the periodic unemployment which tends to accompany the seasonal work engaged in by packing house employes is the very problem which led to enactment of this remedial legislation.

■ Since the facts are undisputed, the interpretation of their legal effect becomes one of law. *Kirkpatrick v. Peet,* 247 Or 204, 428 P2d 405 (1967). The issue then is whether the referee correctly determined that petitioner was not an operator within the statute. We conclude that the referee erred in his interpretation of the agricultural labor exclusion and that petitioner was the operator of the fruit orchards it managed.

■■ In so holding we are not unmindful of the well-established principle that the Employment Division Law was designed to remedy the economic condition of the unemployed working man and is to be liberally construed to the end that employes receive the benefits intended. *Puget Sound B. & D. Co. v. S.U.C.C.,* 168 Or 614, 126 P2d 37 (1942); *Just-A-Mere Farm v. Peet,* 247 Or 413, 430 P2d 987 (1967). Although the corollary of this principle is that the statute will be strictly construed against the employer claiming the exemption, we are not authorized to construe the statute in such a way as to effectively amend it when the language is plain and unambiguous. *Lane County v. Heintz Const. Co.,* 228 Or 152, 364 P2d 627 (1961).

■ The word operator is not defined in the Employment Division Law. Where a statute or ordinance fails to define a term used therein, the term will be construed in accordance with its ordinary meaning. *Clatsop County v. Morgan,* 19 Or App 173, 526 P2d 1393 (1974); *Arundel Supply Corp. v. Cason,* 265 Md 371, 289 A2d 585 (1972).

In *Layman v. State Unemp. Comp. Com.,* 167 Or 379, 393, 117 P2d 974, 136 ALR 1468 (1941), the Oregon Supreme Court adopted the following definition of the word operate:

"'* * * To direct the working of, *to manage,* conduct, work (a railway, business, etc.); to carry

out, direct to an end (an undertaking, etc.) * * *.' " (Emphasis supplied.)

Webster's Third New International Dictionary, Unabridged (1969), defines an operator as "one that produces a physical effect or engages himself in the mechanical aspect of any process or activity" and offers the example of "a person that actively operates a business (as a mine, a farm, or a store) whether as owner, lessor, or employee."

■■ It is apparent that the ordinary meaning of the word operator includes anyone actually exercising the control over farm production. *See People v. Boyden*, 7 Ill App2d 87, 129 NE2d 37 (1955), *modified* 8 Ill2d 264, 133 NE2d 31 (1956). Here, it is undisputed that petitioner exercised complete responsibility for the production of fruit at the orchards it managed and that they yielded more than 50 percent of the fruit packed at its packing house. Hence, petitioner was an operator of those farms within the agricultural labor exclusion. *Compare Henggeler Packing Co., Inc. v. Department of Employ.*, 96 Idaho 392, 529 P2d 1264 (1974).

■ We have not found any cases where the word operator was narrowly defined to include only owners of farms or organizations otherwise having a direct proprietary interest in the farm as a separate business enterprise. Although the wisdom of denying unemployment insurance coverage to packing house employes may be questioned where an employer does not have a direct proprietary interest in the orchards it manages, it is not our function to make that determination. Should the legislature decide it is desirable to extend coverage to such employes, it can easily accomplish that objective. *See Klamath Irr. Dist. v. Employ. Div.*, 21 Or App 61, 534 P2d 190, Sup Ct *review denied* (1975).

Reversed.