HOLMES, Judge.
The Circuit Court of Blount County found King, the appellee-employer, exempt from employer unemployment compensation contributions. The circuit court rescinded an assessment made against King. The assessment, made pursuant to Alabama’s unemployment compensation law, totaled approximately $13,000 and covered the period from 1972 to 1976.
The Alabama Department of Industrial Relations appeals from the circuit court’s action and we affirm.
The dispositive issue on appeal is whether King’s egg processing plant employees were engaged in agricultural labor while in the employ of the operator of a farm. If they are so engaged, the law of Alabama provides that such employment is exempt from unemployment compensation contributions.
The record reveals the following: King was a corporation engaged in an egg farming and processing operation. Although it *73 owned no farms, it did own approximately one-half million chickens.
In producing its eggs, King used the facilities of local farmers. Under a contractual arrangement, these farmers provided the actual poultry farms while King provided the chickens, medication, feed, and the management of the egg laying. The farm owners were generally paid on the basis of the number of eggs produced. King would retain title to the eggs.
The eggs were processed for commercial sale at a plant within the City of Blounts-ville. King employed approximately fifteen persons at this plant and their job was to wash, candle, grade, and pack King’s eggs. The plant itself was owned by the Industrial Development Board of the City of Blountsville and leased to Lease-King, Inc., as sister corporation to J. P. King and Sons. The employees, however, as indicated, were employees of J. P. King and Sons.
There was testimony that the operation was spread out in this manner for various reasons. Mr. Robert A. King stated that the chickens had to be placed on various farms to reduce the risk of disease. The plant was located within the city to secure an adequate water supply and sewage system and to insure compliance with various governmental regulatory requirements.
The Department, upon determining that King was a covered employer in regard to its plant operations, assessed the corporation for unpaid unemployment compensation taxes covering the years 1972 through 1976. See, §§ 25-4-51, 25-134, Code of Ala.1975. King claimed exemption under § 25-4-10(b)(1), asserting that its employees were engaged in agricultural labor either on a farm or in the employ of the operator of a farm.
After an adverse decision by the Department on this point, King appealed the final assessment to the circuit court, which found in its favor.
At the outset, we address two threshold matters crucial to a decision on the merits.
First, King has filed a motion to dismiss the Department’s appeal contending it was not filed in a timely manner. The record discloses the appeal was filed thirty-nine days after the date of judgment.
King argues that § 25-4-134(b)(3), which mandates a thirty day time limit for filing such appeals, must control and not Rule 4, ARAP, which sets a forty-two day limit. However, our supreme court has ruled that when, as here, the appeal is of right, such time periods are procedural and thus covered by the Alabama Rules of Appellate Procedure, any inconsistent statutory provisions notwithstanding. See, Rule 3(a)(1); Strickland v. National Gypsum Co., Ala., 348 So.2d 496 (1976). The motion to dismiss must therefore be denied.
Next, the Department contends that the proceeding below was before the circuit court on a common-law writ of certiorari and that the decision of the 'Department in assessing the taxes was due to be affirmed if there was any legal evidence to support it. The Department further argues that the circuit court had no authority to reconsider the facts before the Department or to try such question de novo'.
In deciding this question, we note that § 25-4-134(b)(3) denominates the action to be taken by an employer dissatisfied with an assessment as an appeal to the circuit court. This section also provides that the assessment made by the director of the Department shall be prima facie correct and casts the burden on the employer to show it is incorrect.
It is clear to this court that this procedure does not constitute common-law cer-tiorari. This statute allows an appeal and casts upon the employer the burden of demonstrating the invalidity of the assessment. There is no statutory provision mandating the preparation of a record at the hearing before the Department. Therefore, the circuit court, in passing on the assessment’s validity, could conceivably have nothing before it but the very fact of the assessment if no independent testimony was allowed on the appeal.
In Board of Dental Examiners v. King, Ala., 364 So.2d 318 (1978), our supreme *74 court, through Justice Shores, construed § 34-9-25, Code of Ala.1975, which allows a party aggrieved by certain orders of the Board of Dental Examiners of Alabama to “bring an action” in circuit court to “set aside said order on the ground that the same is unlawful or arbitrary.” The court held that under this language evidence not before the Board and therefore not part of the record could be introduced at the circuit court hearing so that the aggrieved party could establish that the Board acted unlawfully or arbitrarily. The court reached this conclusion even though such a hearing does not amount to a trial de novo, the legislature having clearly removed this right upon amending § 34-9-25.
As the burden cast upon the challenging parties is so similar in these two appeal statutes, we hold that under § 25-4-134(b)(3), the introduction of independent evidence and a reconsideration of the facts is permissible. Any other interpretation would render the employer’s task an impossibility and the appeal a nullity.
Likewise, we conclude that the scope of review in the circuit court is not limited to a mere determination of whether there is any evidence to support the assessment. The employer is to prove, through appeal, that the assessment was incorrect; not that there was no evidence at all to support it.
Simply stated, if the legislature had intended that the proceeding before the circuit court was to be treated as common-law certiorari with the corresponding limitations on the introduction of evidence and scope of review, it would have so stated. As it has not, we give the words chosen their intended meaning. Katz v. Alabama State Board of Medical Examiners, Ala., 351 So.2d 890 (1977).
Turning now to the merits, we note that the facts before the learned trial judge were not in conflict. Therefore, the presumption of correctness normally afforded when evidence is heard orally does not come into operation on appeal to this court. As a consequence, it is our function to determine whether the learned trial judge correctly determined the legal operation of the exemption statute on the facts at bar. State v. Kershaw Manufacturing Co., 273 Ala; 215, 137 So.2d 740 (1962).
We find that he did and that King was due the agricultural labor exemption. Basically, the unemployment compensation tax is due from the employer for employment covered and defined by § 25-4-10(a) and the exemption is due if the employee’s services come under § 25-4-10(b) which defines those areas which the term “employment” does not cover.
For purposes of this appeal, the following is the relevant language from § 25-4-10(b):
(b) The term “employment shall not include:
(1) Service performed by an individual in agricultural labor ... if such service was performed:
d. In the employ of the operator of a farm, ... in handling, planting, drying, packing, packaging, processing, freezing, grading, storing . . . any agricultural or horticultural commodities.
As we are construing this exemption for the first time in this case, we turn for guidance to foreign jurisdictions which have previously faced the problem of applying the agricultural labor exemption. We find this approach especially useful as the wording in the statute is nearly uniform throughout the states, being conformed to the Federal Social Security Act. As such, unemployment legislation is an integral part of the national plan for social security, representing a cooperative effort by the states and the national government in working for the general welfare. Agri-Foods, Inc. v. Industrial Commission of Missouri, Mo.Ct.App., 511 S.W.2d 898 (1974).
in Agri-Foods, as here, the court was faced with a claimed exemption by a producer-processor-marketer of eggs which did not own or lease a farm, but which did provide its own laying pullets to contract farmers. There too, the corporation re *75 tained title to the layers and eggs, supplied the contract farmers with feed and medication, and supervised operations at the farms.
We would note that a study of related cases reveals that the operational structure employed by King has become very common. See Wirtz v. Tyson’s Poultry, Inc., 355 F.2d 255 (8th Cir. 1966); Etchechoury v. Avi-Simplot, Inc., 93 Idaho 438, 462 P.2d 737 (1969). Indeed, the Missouri Court of Appeals observed that the evidence in Agri-Foods indicated the need for such an operation due to current economic conditions. Noting that similar operations have become typical of egg production throughout the country, the court observed that various regulatory demands preclude a market for eggs unless they are processed as they were in the case at bar.
The court reasoned that the whole character of the employment, not only the place of performance, determines whether an employee is engaged in agricultural labor. Concluding it is self evident that egg production is a farming enterprise and that the chosen device of production does not alter a corporation’s status as farmer engaging in ordinary farming operations, the court held that the processing activity does not lose its character as agricultural labor if done at a plant some distance from the farm.
The Department would distinguish the case at bar on the strength of a Subsequent amendment to both Missouri’s and Alabama’s exemption statute. In Agri-Foods, the exemption was due if the processing of eggs was an activity “incidental to ordinary farming operations.” § 288.034(6)(a)d. RS Mo.1969, V.A.M.S. The Department argues that under Alabama’s present § 25-4-10(b)(1)d., egg processing is exempt only if this service is performed “in the employ of the operator of a farm.” Pointing to King’s admitted nonownership of any poultry farms, the Department would have us hold King is not a farm operator and therefore not due the exemption.
The ultimate question before us can thus be posed: Is King the operator of a farm even though it neither owns nor leases a single farm?
We answer affirmatively. In Naumes of Oregon, Inc. v. Employment Division, 23 Or.App. 57, 541 P.2d 141 (1975), a corporation which managed fruit orchards it did not own was granted the exemption for its packing house employees who processed the fruit, the court concluding that the corporation operated the orchards it managed.
In giving the term “operator” its plain meaning, as we also must do, Quick v. Utotem of Ala., Inc., Ala.Civ.App., 365 So.2d 1245 (1977), the Oregon court defined that term by borrowing from Webster’s Third New International Dictionary, Unabridged (1969):
[0]ne that produces a physical effect or engages himself in the mechanical aspect of any process or activity ... a person that actively operates a business (as a mine, a farm, or a store) whether as owner, lessor, or employee.
The Oregon court went on to say that the lack of a proprietary interest in the farm being managed does not disqualify one as an operator of that farm, concluding the word embraces anyone actually exercising control over farm production.
As our statute clearly includes poultry farms within the definition of “farm,” § 25-4-10(b)(l)e, and as King managed egg production under its contractual arrangements, it was the operator of a farm within the meaning of the statute and entitled to the appropriate exemptions.
This case is due to be affirmed.
AFFIRMED.
WRIGHT, P. J., and BRADLEY, J., concur.