Argued and submitted July 21, reversed October 13, 1980

In the Matter of the Compensation of

FLETCHER,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND, et al,
*Respondents.*

(WCB 79-1407, CA 16868)

617 P2d 945

Ann Morgenstern, Portland, argued the cause and filed the brief for petitioner.

Richard D. Barber, Jr., Certified Law Student, Salem, argued the cause for respondent State Accident Insurance Fund. On the brief were K. R. Maloney, Chief Counsel, James A. Blevins, Chief Trial Counsel, and Darrell E. Bewley, Associate Counsel, State Accident Insurance Fund, Salem.

No appearance made by respondent Workers' Compensation Department.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

ROBERTS, J.

## ROBERTS, J.

This is an appeal from a Workers' Compensation Board decision interpreting ORS 656.209.[1] That statute provides:

"(1) With the authorization of the department, the amount of any permanent total disability benefits payable to an injured worker shall be reduced by the amount of any disability benefits the worker receives from federal social security.

"* * * * *

"(3) No reduction of benefits shall be authorized pursuant to this section except upon *actual receipt* of federal social security disability benefits by the injured worker.

"* * * * *." (Emphasis supplied.)

We take the following facts as stated in the referee's Opinion and Order:

"Claimant began receiving social security benefits in 1974 and was awarded permanent total disability under the Oregon Workers' Compensation Law in March 1977. The offset provisions of ORS 656.209 applied to claimant on July 1, 1978.

"Pursuant to authorization, SAIF applied offset to claimant's compensation beginning in July 1978. The offsets imposed were for varying amount, but it was finally determined and agreed by all parties that the correct amount of offset was $284 a month. The Social Security Administration (SSA) claimed it had overpaid claimant in the past in the amount of $1,616.50 and by letter dated May 8, 1978 indicated it would withhold benefits beginning in June 1978. Claimant testified and, I believe credibly, that he did

---

[1] The statutory provision in dispute here was a part of the 1977 legislative enactment that revised the manner of determining permanent total disability status, required beneficiaries to file annual statements of income to enable the Board to order benefit reductions if the worker is regularly employed, and required the Board to reduce benefits when the worker receives benefits from social security. The Act also required the Board to promulgate rules (1) requiring injured workers to make application for federal social security disability benefits, (2) requiring injured workers to file a release authorizing the social security agency to disclose information to the Board, (3) prescribing procedures for ordering reduction of benefits and (4) proscribing procedures for preventing injured workers from receiving benefit amounts in excess of the amounts set forth under the statute here in dispute.

not receive the letter until September 1978 * * *. The SSA did not pay claimant any benefits from July 1978 through October 1978 and a reduced benefit in November 1978.

"In August 1978 claimant contacted SAIF and informed them that he was not receiving monthly social security payments. SAIF continued to take its offset. In addition, in August 1978 the Fund advised claimant it had overpaid him in July and was reducing his payment by $31.06 a month to recoup the overpayment * * *. It did so for six months * * *. * * * Pursuant to Chapter 117 Oregon Laws 1979 claimant was refunded $199.70 on June 1, 1979. For the present and the past several months claimant has been receiving the correct amount of compensation."

The referee concluded SAIF was not entitled to assert an offset during the months claimant did not actually receive social security benefits. The referee stated:

"* * * * *

I believe ORS 656.209 provides that a worker must actually receive the social security benefits for the month the offset is claimed. Although theoretically claimant may have received the social security benefits some months or years before, the implementation of the change in the law as applied in this case resulted in claimant having to live through an unanticipated substantial reduction in his monthly income. Workers' compensation is intended to provide for the care and support of injured workers and their families. The actual receipt rule, while as pointed out by the Attorney General's brief, may provide administration problems in some instances, avoids the wide fluctuation in monthly income and resultant financial hardship that would otherwise be the case. * * *

"* * * * *."

The Board reversed the referee, stating:

"* * * Claimant, in this case, has been paid all the compensation he is entitled to. Claimant was overpaid or 'paid in advance' his Social Security benefits. The Social Security Administration acted by withholding payment of additional benefits from July 1978 through October 1978 and made only a part payment of benefits in November 1978 to balance out

what claimant had been paid with what he was entitled to. The end result was that claimant was paid for this time in advance and the Fund was entitled to treat this claim as if claimant had been paid these Social Security benefits during this period. * * *"

We reverse the Board.

■     We conclude the language of the statute is clear and unambiguous and therefore does not require a determination of legislative intent. *State v. Cooney,* 36 Or App 217, 584 P2d 329, *School Dist. 24J v. Employment Div.,* 29 Or App 897, 565 P2d 1102 (1977), *Speck Restaurant v. OLCC,* 24 Or App 337, 545 P2d 601 *rev den, dismissed for want of a federal question* 429 US 803, 97 S Ct 35, 50 L Ed 2d 64 (1976). Terms of a statute, unless defined in the statute, are to be construed in accordance with their ordinary meaning. *Naumes of Ore. v. Employment Div.,* 23 Or App 57, 541 P2d 141 (1975); *Piazza v. Clackamas Water District,* 21 Or App 469, 535 P2d 554 (1975); *Clatsop County v. Morgan,* 19 Or App 173, 526 P2d 1393 (1974). We hold that the words "actual receipt" means, in the context of this statute, that a person has *in fact* received social security benefits.

■     SAIF argues that this claimant did in fact receive the benefits and that therefore SAIF is entitled to an offset accordingly. We conclude, however, that as to this claimant the question is not the interpretation of the language of the statute but whether the statute operates retroactively. Generally, in the absence of any indication to the contrary, legislative acts are not to be applied retroactively. *Held v. Product Mfg. Co.,* 286 Or 67, 592 P2d 1005 (1979); *Joseph v. Lowery,* 261 Or 545, 495 P2d 273 (1972). We find no indication that this statute is to be applied retroactively.

■     In the case of injuries incurred prior to the effective date of the Act, October 4, 1977, the change in the way benefits were to be paid was effective July 1, 1978. Claimant's injuries were incurred prior to the effective date; therefore July 1, 1978 is the date the provisions of the Act are effective as to him. Claimant received overpayments from social security before the

effective date of the statute allowing an offset. SAIF deducted the offset after the effective date, but at a time when claimant was not receiving social security benefits because of social security administration's action to recover its overpayments. The effective date as to this claimant is July 1, 1978, and the right to offsets must begin from that date.

■    SAIF argues that our decision will "create insurmountable problems for both claimants and insurers." We note, however, that the administrative rules promulgated pursuant to the statute and adopted June 5, 1978, OAR 438-26-005 to OAR 438-26-050,[2] set out conditions for establishing an offset, requirements

---

[2] OAR 438-26-025 provides in pertinent part:

"(4) Offset of permanent total disability benefits shall:

"(a) Be authorized by the Director only upon actual receipt of Federal Social Security disability benefits by the injured worker."

OAR 438-26-030 provides in pertinent part:

"(1) On or after the effective date of these rules, workers entitled to receive permanent total disability benefits shall:

"* * * * *

"(b) Workers and eligible beneficiaries must execute a release form authorizing the Social Security Administration to make disclosure to the Department of such information regarding the injured worker as will enable the Department to carry out the provisions of ORS 656.209 and these rules.

"(c) Whenever there is a change in beneficary eligibility the worker and beneficiaries must execute a new release and file with the Social Security Administration.

"(2) Upon request of the Department, the worker may be required at any time to furnish additional information including but not limited to a statement of the worker's earnings. He may also be required to execute a release authorizing the Social Security Administration to make disclosure to the Department of such information regarding the injured worker as will enable the Department to carry out the provisions of ORS 656.209 and these rules.

OAR 438-26-035 provides in pertinent part:

"(1) Any worker entitled to receive permanent total disability benefits who fails to comply with these rules shall be subject to suspension of benefits until the worker has complied.

OAR 438-26-045 provides in pertinent part:

"(3) The Department shall monitor the status of workers subject to Social Security disability offset and will, when conditions change, cause an amended authorization to be issued."

for worker cooperation, sanctions against a worker for failure to cooperate and for recovery of overpayments. If those rules are not adequate the Board may supplement them. Any administrative inconveniences or hardships must be addressed to the legislature.[3]

   Reversed.

---

[3] The decision of the referee disallowing attorney fees in this case was proper.