Submitted on record and briefs August 2, affirmed September 26, petition for review denied December 26, 2007 (343 Or 690)

Paul E. FOLAND
and Constance J. Foland,
*Respondents,*

*v.*

JACKSON COUNTY,
*Respondent below,*

*and*

Dom PROVOST
and Joyce Provost,
*Petitioners.*

Chris N. SKREPETOS
and Cynthia Lord,
*Respondents,*

*v.*

JACKSON COUNTY,
*Respondent below,*

*and*

Dom PROVOST
and Joyce Provost,
*Petitioners.*

Land Use Board of Appeals
2006206, 2006211
A135937

168 P3d 1238

E. Michael Connors, Gregory S. Hathaway, and Davis Wright Tremaine LLP filed the brief for petitioners.

Paul E. Foland and Constance J. Foland filed the brief for respondents *pro se*.

Charles Swindells filed the brief for respondents Chris N. Skrepetos and Cynthia Lord.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

LANDAU, P. J.

## LANDAU, P. J.

The Land Use Board of Appeals (LUBA) reversed a decision of Jackson County to approve a preliminary development plan for a destination resort. The applicants for that preliminary development plan seek judicial review of LUBA's final order and opinion, arguing that LUBA failed to adequately defer to the county's interpretation of its own land development ordinance. We affirm.

The relevant facts are not in dispute. The county has adopted an approval process for destination resort developments. The process consists of three stages. The first stage is the conceptual site plan (CSP), and it involves a broad outline of the proposed resort. The second stage is the preliminary development plan (PDP), which must be consistent with the CSP but must also provide greater detail. The third stage of approval is the final development plan (FDP).

The Jackson County Land Development Ordinance (LDO) establishes deadlines for each of the three stages in the process.[1] Of relevance to the disposition of this case is the provision of the LDO that establishes a three-year deadline for the approval of an FDP once the PDP has been approved:

> "Preliminary development plan approval shall be valid for a period of three years from the date of approval by the Board of Commissioners. Within that time period, the applicant shall submit a final development plan. Prior to the expiration of a preliminary development plan, the property owner may initiate a request for a one year extension of time for submitting a final development plan. A time extension may only be approved upon a finding that circumstances have not changed sufficiently since the initial approval to render the preliminary development plan inappropriate or not in compliance with existing regulations and the conceptual site plan."

LDO 246.070(9). The LDO further provides that if an FDP is not submitted within three years of approval of the PDP, "the latter shall expire and a new conceptual site plan and preliminary development plan shall be required." LDO 246.080(3).

---

[1] References to specific county ordinances are to those in effect at the relevant time.

In this case, the property owners, Dom and Joyce Provost, applied for a CSP for a destination resort in the late 1980s. The county approved the proposed CSP in 1989. Respondents appealed that decision to LUBA, and LUBA remanded the county's decision. *Foland v. Jackson County*, 18 Or LUBA 731 (1990). That decision ultimately was affirmed by the Supreme Court. *Foland v. Jackson County*, 311 Or 167, 807 P2d 801 (1991). On remand, the county again approved the CSP. Respondents again appealed to LUBA, which this time affirmed the county's approval decision. *Bouman v. Jackson* County, 23 Or LUBA 628 (1992). In 1994, the Provosts submitted a PDP for approval. The county approved the PDP, and, once again, respondents appealed the county's decision to LUBA. LUBA remanded the county's decision. *Skrepetos v. Jackson County*, 29 Or LUBA 193 (1995). The case then remained before the county on remand for over 10 years.

The Provosts eventually submitted a modified PDP. Respondents opposed the approval of the modified PDP. They argued that, among other things, the deadline for approval of the PDP had long since expired under LDO 246.070(9) and LDO 246.080(3). The county rejected respondents' argument, concluding that the LDO deadlines apply only to cases in which the county has given final approval at each stage; according to the county, the time limits are, in effect, tolled during the period of appeal to LUBA and during any remand that may follow:

> "The Board of County Commissioners interpret[s] the time limitations set forth in these code provisions as being triggered only after the County provides final approval of the preliminary development plan. Although the Board of County Commissioners initially approved the Preliminary Plan in 1994, LUBA's [r]emand suspended that approval pending resolution of the issues identified by LUBA."

The county commented that it regarded its gloss on the ordinance as necessary to prevent litigants from making it "virtually impossible" for applicants to obtain approval of their development plans by continually appealing them.

Respondents appealed to LUBA, arguing that the county had erred in rejecting their contention that the deadline for approval of the PDP had expired. LUBA agreed with

respondents. It concluded that the county's interpretation of the LDO was inconsistent with the express language of the ordinance, explaining as follows:

> "We note at the outset that the fundamental problem is that the drafters of the above LDO provisions did not expressly address whether or how appeals to LUBA and beyond might affect the deadlines established in these sections. To address that potential delay and the problems that delay might cause under these sections of the LDO, the county introduces the concept of *initial* PDP approval and *final* PDP approval. As we understand the county, it uses the term *initial* PDP approval to describe the initial or first decision that the county adopts that approves a PDP. That *initial* approval could also be the *final* PDP approval, but only if the initial PDP approval decision is not appealed to LUBA or, if the *initial* PDP approval decision is appealed to LUBA, the *initial* PDP approval decision would not become the *final* PDP until LUBA and any appellate court affirmed the appealed *initial* PDP approval.

> "Where an initial PDP approval decision is appealed to LUBA, and LUBA remands the *initial* PDP approval, we understand the county to take the position that there can be no *final* PDP approval decision until the county adopts a subsequent decision or decisions that approve the PDP in response to the LUBA remand * * * and that subsequent PDP decision is not appealed to LUBA or is affirmed by LUBA. That affirmed or unappealed subsequent PDP decision would be the county's *final* PDP approval.

> "There is a fatal problem with the county's purported 'interpretation' of the above-quoted LDO sections. The county has not *interpreted* the quoted LDO sections, it has attempted to rewrite them to address a problem that the drafters apparently did not expressly anticipate. It has inserted the concepts of *initial* PDP approval and *final* PDP approval, when the LDO sections themselves do not employ those concepts. The county is certainly free to amend these sections to address any concerns it may have about whether LUBA appeals might make complying with the deadlnes established by those sections difficult or impossible. But the county is not free to insert new terms or concepts into those LDO sections without amending those LDO sections."

(Emphases in original.)

The Provosts now seek judicial review of LUBA's final order and opinion, arguing that it failed to give adequate deference to the county's interpretation of its own development ordinances as required by ORS 197.829, which provides, in part:

"(1) The Land Use Board of Appeals shall affirm a local government's interpretation of its comprehensive plan and land use regulations, unless the board determines that the local government's interpretation:

"(a) Is inconsistent with the express language of the comprehensive plan or land use regulation;

"(b) Is inconsistent with the purpose for the comprehensive plan or land use regulation;

"(c) Is inconsistent with the underlying policy that provides the basis for the comprehensive plan or land use regulation; or

"(d) Is contrary to a state statute, land use goal or rule that the comprehensive plan provision or land use regulation implements."

The Provosts contend that LUBA erred in this case because its decision failed to identify any language in the applicable development ordinances with which the county's decision was "inconsistent." In their view, LUBA's decision, at most, merely established that there is an absence of textual support for the county's decision, which is not sufficient to establish the "inconsistency" that ORS 197.829(1)(a) requires. According to the Provosts, LUBA—in concluding that the county completely lacked textual support for its interpretation of its ordinance—relied too much on the principles of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), which they suggest do not apply to a review of a local government's interpretation of its own ordinances.

■ Thus framed, the issue before us on judicial review is whether LUBA's order is "unlawful in substance" because LUBA neglected to apply the appropriate standard of review. ORS 197.850(9)(a). As we have noted, ORS 197.829(1) provides that LUBA must defer to a local government's interpretation of its own ordinances unless, among other things, that

interpretation is "inconsistent" with the language of the ordinance. Whether a local government's interpretation of its ordinance is "inconsistent" with the language of the ordinance depends on whether the interpretation is plausible, given the interpretive principles that ordinarily apply to the construction of ordinances under the rules of *PGE*. We have previously considered, and rejected, suggestions such as the Provosts' in this case that the principles of interpretation articulated in *PGE* do not apply to our examination of the plausibility of a local government's interpretation of its own ordinances. *See, e.g., Wal-Mart Stores, Inc. v. City of Oregon City*, 204 Or App 359, 364-65, 129 P3d 702, *rev den*, 341 Or 80 (2006) ("We see no inconsistency in following the steps of statutory interpretation articulated in *PGE* while also giving a local legislative body's interpretation and application of its own enactments some deference * * *."). We adhere to that conclusion in this case as well.

■ With that in mind, we turn to LUBA's evaluation of the local government's interpretation of its own ordinances in this case. In brief, we concur with LUBA's analysis. The county's decision is supported by no language in the ordinances that it is supposedly interpreting. Its interpretation is thus inconsistent with the language of the ordinance and is entitled to no deference. ORS 197.829(1)(a).

■ The Provosts insist that the absence of language in the ordinances about the effect of an appeal to LUBA on the deadlines described in them introduces an ambiguity, which establishes an occasion for the deference required in ORS 197.829. An "ambiguity," however, is a term of art when it is applied to the interpretation of statutes and ordinances; it refers to the existence of more than one reasonable construction of the language that was actually enacted or adopted. *See, e.g., City of Keizer v. Lake Labish Water Control Dist.*, 185 Or App 425, 431, 60 P3d 557 (2002) ("[W]e are constrained by the wording actually enacted and may not insert wording that the legislature has omitted."). In this case, the Provosts have identified no language in the ordinance that, when reasonably construed, supports the county's decision.

We conclude that LUBA did not err in concluding that the county misconstrued its development ordinances in approving the Provosts' PDP.

Affirmed.