Argued and submitted May 13, affirmed August 5, 2009

WESTERN LAND & CATTLE, INC.;
and Pliska Investments, LLC.,
*Petitioners,*

*v.*

UMATILLA COUNTY
and Flying J, Inc.,
*Respondents.*

Land Use Board of Appeals
2008144; A141408

214 P3d 68

E. Michael Connors argued the cause for petitioners. With him on the brief was Davis Wright Tremaine LLP.

Roger A. Alfred argued the cause for respondent Flying J, Inc. With him on the brief were Michael C. Robinson, Corinne S. Celko, and Perkins Coie LLP.

No appearance for respondent Umatilla County.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Petitioners seek review of an opinion and order of the Land Use Board of Appeals (LUBA). LUBA affirmed in part and remanded a land use decision of Umatilla County (county). The county decision approved a conditional use permit for the operation of a "travel plaza" on property owned by respondent Flying J, Inc. (respondent) adjacent to a federal interstate highway. The permit for the travel plaza authorized operation of automotive and truck fuel stations, a truck service building, a truck wash building, a restaurant, a convenience store, and other accessory uses on respondent's property. Petitioners, who own competing travel plazas, contend that LUBA erred in affirming the county's allowance of the truck-related components of the project as conditional uses. Petitioners also assert that LUBA erred in affirming a condition of the permit that allowed respondent to defer paying part of the costs of a roadway intersection improvement. We review LUBA's opinion and order to determine if it is "unlawful in substance." ORS 197.850(9)(a). We affirm for the reasons stated below.

To summarize the facts stated in the LUBA opinion, respondent owns a 70.39-acre parcel located at the intersection of Interstate 82 and Lamb Road, approximately 5.5 miles southwest of Hermiston. The property consists of two tax lots. The bulk of the property is zoned tourist commercial (TC), and the remainder is zoned light industrial (LI). Respondent applied to the county for conditional use approval of a travel plaza use. A travel plaza houses commercial uses that cater to highway travelers and their motor vehicles. The proposed travel plaza includes a restaurant, a travel convenience store, automotive fueling stations, commercial truck fueling stations, a commercial truck service building, a commercial truck wash building, and accessory improvements. Most of the proposed development would be within the area zoned TC, with some parking, drainage facilities, and the truck scales located within the LI-zoned area. The present dispute concerns the application of the TC zoning district provisions.

The TC zoning in effect at the time of the application allowed some of the requested uses as permitted uses.[1] Umatilla County Development Code (UCDC) 152.276(B) listed the uses permitted in the TC zone as including an "automobile service station," "eating or drinking establishment," "food store limited to 2,500 square feet," "gift shop," and "information center." UCDC 152.003 defined "automobile service station" as "[a]ny building, land area or other premises or portion thereof, used or intended to be used for the retail dispensing or sale of vehicular fuels; and including as an accessory use the sale and installation of lubricants, tires, batteries and similar accessories." Thus, the restaurant, convenience store, and automobile service station uses were permitted on the property without a conditional use permit. The parties concur that the commercial truck fueling stations, truck service building, and truck wash facility could be included in the travel plaza only if they were approved as conditional uses under UCDC 152.277(E).

UCDC 152.277 set out the allowed conditional uses in the TC zoning district, including:

> "Other uses similar to the uses permitted or the conditional uses normally located in a Tourist Commercial Zone, providing that it has the approval of the Planning Commission."

UCDC 152.277(E). In addition, UCDC 152.009 generally allowed conditional uses in certain circumstances in any zoning district. That zoning provision provided:

> "The Planning Commission may permit as a conditional use in a particular zone a use not listed in this chapter, provided the use is of the same general type as the uses permitted there by this chapter."

The county approved the conditional use permit requested by respondent under the authority of UCDC 152.277(E). The county concluded that each of the desired

---

[1] Generally speaking, the county land use regulations in effect at the time of an application for a land use permit apply to the permit. ORS 215.427(3)(a). The referenced county ordinances are those in effect on November 10, 2005, the date of the application for the conditional use permit.

uses was a permitted or conditional use allowed in the TC zoning district. The county determined:

> "The multiple uses proposed by the applicant are similar, if not identical, to the uses that are specifically allowed as permitted uses in the TC zone under UCDC § 152.276(B). The only proposed uses that are not expressly listed as permitted uses are the truck service station and truck wash. The Board finds that these uses are similar to an automobile service station, and therefore the entire composite of uses may be approved under UCDC § 152.227(E). The Board finds that this interpretation of the code is consistent with long-standing County precedent regarding the application of the 'similar use' standard."

Petitioners claimed that the requested nonpermitted uses constituted a "truck stop" under the development code. UCDC 152.003 defined "truck stop":

> "Any building, premise or land in which or upon which maintenance, servicing, storage or repair of commercial licensed trucks or motor vehicles is conducted or rendered, including the dispensing of motor fuel or other petroleum products directly into the trucks or motor vehicles, the sale of accessories or equipment for trucks or similar motor vehicles."

The development code specifically allowed a "truck stop or trucking terminal" as a conditional use in the Commercial Rural Center (CRC) zoning district. UCDC 152.262(H). The CRC zoning district also allowed the other travel plaza uses requested by respondent. UCDC 152.261(B)(2) - (4).

Petitioners argued that the "truck stop" uses could not be allowed as conditional uses in the TC zoning district because they were explicitly listed as conditional uses in the CRC district and therefore implicitly prohibited elsewhere. Petitioners also claimed that UCDC 152.009, the general "similar use" provision, limited the operation of UCDC 152.277(E). Because UCDC 152.009 allowed uses "of the same general type" as listed in a zoning district only if the use was otherwise "not listed in this chapter," and the "truck stop" uses were listed as conditional uses in the CRC zone, petitioners asserted that the combination of uses that were a "truck stop" could not be allowed on TC-zoned land as a conditional use.

The county rejected petitioners' interpretation of the code. It reasoned that the purpose of UCDC 152.009, the general "similar use" provision, was not to limit otherwise allowed and generic conditional uses and that the particular "similar use" allowance in the TC zone controlled over that general provision at UCDC 152.009:

"The Board finds that UCDC § 152.009 does not require the opponents' desired result. First, the language of the code section allows a more reasonable and less restrictive interpretation. * * * This section provides a general permissive grant of authority to allow a particular use in a zone, even if that use was not expressly listed by the code. The purpose of this provision is to provide the County with flexibility to allow uses that were not expressly enumerated, so long as they are found to be similar to other listed uses. This section should not be read to require that such similar uses may *never* be allowed (as through the application of UCDC § 152.277(E)), if the use *is* listed in another zoning district. In other words, the Board does not interpret the phrase 'a use not listed in this chapter' to create a limitation, but rather to expand the universe of uses that could be allowed (and in fact, are allowed by UCDC § 152.277(E)). * * *

"Second, the Board [concludes] * * * that the more specific language of UCDC § 152.227(E) must be read to control over the general language of UCDC § 152.009. UCDC § 152.277(E) is very specific to uses in the TC zone, and allows 'other uses similar to the uses permitted or the conditional uses normally located in a Tourist Commercial Zone, providing that it has the approval of the Planning Commission.' On the other hand, UCDC § 152.009 is located in the 'General Provisions' section of UCDC Chapter 152, and applies generally to uses that could be allowed in any zoning district. It is well-established that general local ordinance provisions are controlled by more specific provisions."

(Emphasis in original.)

Petitioners appealed the conditional use permit approval to LUBA. They raised six assignments of error, one of which was that the county erred in allowing truck stop uses in the TC zone as similar uses under UCDC 152.277(E), because those uses were precluded by UCDC 152.009 and

were otherwise allowed by UCDC 152.262. LUBA sustained two unrelated assignments of error and remanded the permit to the county for further action. The board denied petitioners' claim of error on the county's allowance of the truck-related uses as conditional uses in the TC zone, concluding:

"LUBA must affirm a governing body's interpretation of local code provisions that are consistent with the express language, purpose or underlying policy. ORS 197.829(1); *Church v. Grant County*, 187 Or App 518, 69 P3d 759 (2003). Petitioners' preferred interpretation subsumes UCDC 152.277(E) into the general similar use provision at UCDC 152.009, and gives the specific provision no independent role or meaning. The county's interpretation gives meaning to both provisions, and is therefore more consistent with the terms of both provisions. Certainly, we cannot say that the [county's] interpretation is inconsistent with the express language, purpose or underlying policy. Accordingly, we affirm that interpretation. ORS 197.829(1)."

On review, petitioners claim that LUBA erred in sustaining the county's interpretation of UCDC 152.277(E) as allowing a conditional use that is otherwise precluded by UCDC 152.009 and that is implicitly only allowed as a "truck stop" use in the CRC zone. Petitioners also claim that LUBA erred in affirming a condition of approval that required future monetary contribution to an intersection improvement project, rather than immediate construction of that improvement. We reject without further discussion petitioner's second claim and affirm the board's deference to the county's interpretation of its ordinances under ORS 197.829.

We begin with the standard of review under that statute. ORS 197.829(1) states rules of deference by LUBA to a local government's interpretation of its land use policies. ORS 197.829(1) provides:

"The Land Use Board of Appeals shall affirm a local government's interpretation of its comprehensive plan and land use regulations, unless the board determines that the local government's interpretation:

"(a) Is inconsistent with the express language of the comprehensive plan or land use regulation;

"(b)   Is inconsistent with the purpose for the comprehensive plan or land use regulation;

"(c)   Is inconsistent with the underlying policy that provides the basis for the comprehensive plan or land use regulation; or

"(d)   Is contrary to a state statute, land use goal or rule that the comprehensive plan or land use regulation implements."

Thus, under ORS 197.829, the rules of deference parallel some, but not all, rules of construction used in determining the meaning of an ordinance. Under the statute, if deference is owed to the locality's interpretation of its plan or regulation, then that interpretation must be affirmed. If deference is not owed, LUBA can reverse that interpretation if it is inconsistent with the legislative intent in enacting the provision as revealed by the application of rules of statutory construction.

We review LUBA's application of ORS 197.829 to determine whether that analysis is "unlawful in substance." ORS 197.850(9)(a). In this case, petitioners challenge LUBA's opinion and order on the ground that LUBA erred in deferring to the county's interpretations of its code that were "inconsistent with the express language" of the code under ORS 197.829(1)(a). Petitioners do not contend that the county's constructions of its code were inconsistent with the purposes or underlying policies of the relevant land use regulations or that they were contrary to the governing policies implemented by those regulations. ORS 197.829(1)(b), (c), and (d).

■   Whether a local government's interpretation of its comprehensive plan or land use regulation is "inconsistent with the express language" of the plan or regulation under ORS 197.829(1)(a) "depends on whether the interpretation is plausible, given the interpretive principles that ordinarily apply to the construction of ordinances under the rules of *PGE* [*v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993)]." *Foland v. Jackson County*, 215 Or App 157, 164, 168 P3d 1238, *rev den*, 343 Or 690 (2007). Put another way, the "consistency with the express language"

inquiry looks at the text of the plan provision or the regulation in question, as well as the context of other parts of the plan or regulation that are relevant to the textual meaning of that "express language."

■ ■   Thus, the reference in ORS 197.829(1) to "express language" requires the application of constructional rules related to the text of an ordinance. Therefore, in determining whether a local government's interpretation of its land use plan or regulation is "inconsistent with the express language of the comprehensive plan or land use regulation" under ORS 197.829(1)(a), we apply the statutory construction principles in ORS 174.010 and ORS 174.020(2) that are based on the "express language" of a provision.[2] Although those statutes are written to pertain to "the construction of a statute," we use them as well in the interpretation of local ordinances. *Ramirez v. Hawaii T & S Enterprises, Inc.*, 179 Or App 416, 425, 39 P3d 931 (2002). We also apply other textual canons of construction in evaluating a local government's interpretation of its plan or regulation under ORS 197.829(1)(a). Those canons include some rules applied in "first level" *PGE* analysis, such as giving words of common usage their "plain, natural, and ordinary meaning" and recognizing that "use of the same term throughout a statute indicates that the term has the same meaning throughout the statute." *PGE*, 317 Or at 611.[3]

■   On review, petitioners contend that LUBA erred in applying ORS 197.829 to the county's interpretation of

---

[2] ORS 174.010 provides:

"In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all."

ORS 174.020(2) provides that, in the construction of a statute, "[w]hen a general and particular provision are inconsistent, the latter is paramount to the former so that a particular intent controls a general intent that is inconsistent with the particular intent."

[3] On the other hand, the legislative intent in enacting a land use policy, as shown in its legislative history, is not pertinent to the "express language" factor under ORS 197.829(1)(a). That legislative history, however, may be relevant in identifying the "purpose" or "underlying policy" of the measure, or the "state statute, land use goal or rule that the comprehensive plan provision or land use regulation implements" under the remaining ORS 197.829 factors.

UCDC 152.277(E). Petitioners reiterate their contention that application of UCDC 15.277(E), the "similar use" provision in the TC zoning district, to allow truck-related uses sufficient to comprise a "truck stop" in the TC zone is "inconsistent with the express language" of the development code. They reason that the express text of UCDC 152.262(H) allows a "truck stop or trucking terminal" as a conditional use in the CRC zone and that the express allowance of a "truck stop" use in one zoning district implies that any combination of uses that is a "truck stop" use is precluded in all other zoning districts, including the TC zoning district. Petitioners further argue that the specific limitations on permissible "similar uses" in UCDC 152.009 (to allow only those uses "not listed in this chapter") apply to the similar uses countenanced by UCDC 152.277(E). Therefore, petitioners conclude that the county's interpretation of UCDC 152.277(E) is not entitled to deference under ORS 197.829(1)(a) and should be overturned. Petitioners additionally claim, without any reference to any relevant portion of ORS 197.829, that the county's interpretation of UCDC 152.277(E) is not subject to deference because it is inconsistent with a ruling of the Land Conservation and Development Commission (LCDC) on the county's land use ordinances.

Petitioners do not dispute the county's interpretation of the text of UCDC 152.277(E) as permitting components of truck stop uses in the TC zone, that is, that those truck-related uses are "similar to" the "automobile service station" permitted use in the TC zoning district. Instead, petitioners contend that UCC 152.277(E) is limited by the operation of UCDC 152.262(H), the code provision that allows a "truck stop or trucking terminal" as a conditional use in the *CRC zoning district*. In essence, petitioners argue that both provisions regulate the uses allowed in the TC zoning district, that UCDC 152.262(H) by negative implication precludes truck stops except in the CRC zone, and that the implicit preclusion of truck stops under UCDC 152.262(H) controls over any express allowance of that use by UCDC 152.277(E). The county interpreted UCDC 152.262(H) to not have that implied effect. Thus, the question becomes whether the county's interpretation of UCDC 152.262(H) is entitled to deference under ORS 197.829, *i.e.*, whether the county's

interpretation of UCDC 152.262(H) is inconsistent with its "express language" under ORS 197.829(1)(a).

The "express language" of UCDC 152.262(H) permits "truck stops and truck terminals" as a conditional use in the CRC zoning district; it says nothing about truck stops anywhere else. If there is a negative implication by that allowance, it comes from some place other than the "express language" of UCDC 152.262(H). It could be that the county describes each of its allowed land uses in the development code by particular and exclusive wording, so that an inference could be drawn that the meanings of two described uses do not overlap. Even if that inference could be drawn from the structure of the code as a whole, it is not compelled by the "express language of the * * * land use regulation," *i.e.*, the text of UCDC 152.262(H) and other expressly applicable provisions.[4]

In sum, petitioners' application of ORS 197.829(1)(a) to avoid deference to the county's interpretation of UCDC 152.262(H) and UCDC 152.277(E) fails because it relies on a rule of permissible inference as to the meaning of an ordinance and not on the express language of the enactment itself. It is only that "express language" of the provisions that is relevant in applying the rule of deference stated in ORS 197.829(1)(a). We conclude that the county's interpretation of

---

[4] Petitioners argue that such an inference was drawn in *Clatsop County v. Morgan*, 19 Or App 173, 178-79, 526 P2d 1393 (1974). We disagree. In *Clatsop County*, we held that the failure to list a particular use as a permitted or conditional use in a zoning district provision meant that the use was not allowed in that district, particularly when that use was listed as an allowed use elsewhere. In that case, the landowners sought to construct a commercial amusement establishment on their property that was zoned A-1 (Agricultural and Forestry). The applicable zoning ordinance did not list amusement parks as an allowed or conditional use in the A-1 zone; instead, the use was allowed as a conditional use in the commercial zoning districts. We concluded that "the drafters intended to restrict commercial amusement establishments to commercial (C-1, C-2) zones" because by "expressly assigning amusement park activities to commercial zones, the legislative body has restricted such activities to commercial zones only, and by necessary inference has expressed an intent that similar activities not be carried on in any other zone." 19 Or App at 178-79. *Clatsop County* did not involve construing the meaning of a listed use in a zoning ordinance to avoid overlapping allowed uses among the various zoning districts, the statutory construction principle advanced by petitioners. *Clatsop County* determined only that a zoning use is allowed in the district in which it is listed and not in a district in which it is not listed. We rejected the argument that zoning ordinances implicitly preclude overlapping allowed uses among the zoning districts in *Sarti v. City of Lake Oswego*, 106 Or App 594, 809 P2d 701 (1991).

UCDC 152.262(H) to regulate only the allowance of truck stops in the CRC zoning district, and not to preclude that use elsewhere, is not "inconsistent with the express language" of UCDC 152.262(H). Because the county's interpretation of UCDC 152.262(H) is consistent with its wording, that interpretation is entitled to deference under ORS 197.829(1)(a). Thus, LUBA did not err in affirming the county's application of UCDC 152.262(H) and UCDC 152.277(E) to allow the truck stop uses.

■ Petitioners next contend that LUBA erred in affirming the county's interpretation of UCDC 152.009 to not limit the type of conditional uses that can be allowed by UCDC 152.277(E). Again, petitioners do not claim that the county's interpretation of UCDC 152.009 is inconsistent with the apparent purpose or underlying policy of the law or contrary to an enactment that is implemented by UCDC 152.009. ORS 197.829(1)(b) - (d). Rather, they suggest that the "express language" of UCDC 152.009 states the exclusive means for allowing conditional uses that are not identified specifically in the development code.

We agree with LUBA that the county's interpretation of UCDC 152.009 is consistent with its text and apparent purpose. The county concluded that "the purpose of [UCDC 152.009] is to provide the County with flexibility to allow uses that were not expressly enumerated * * * [and not] to require that such similar uses may *never* be allowed (as through the operation of UCDC § 152.227(E)), if the use *is* listed in another zoning district." (Emphasis in original.) Reading UCDC 152.009 to state the exclusive means for locating "similar uses" renders UCDC 152.277(E) surplusage. ORS 174.010 dictates that, "where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all." Thus, the county correctly read UCDC 152.009 to state the policy for locating uses not otherwise listed in the code, and UCDC 152.277(E) to apply in different circumstances, *i.e.*, to set out conditional use allowances in the TC zoning district without regard to whether the use is listed elsewhere. That construction gives independent effect to each provision and is more consistent with the "express language" of each provision under ORS 197.829(1). Because we read the provisions to be consistent with each other, there

is no need to apply ORS 174.020(2) ("When a general and particular provision are inconsistent, the latter is paramount to the former so that a particular intent controls a general intent that is inconsistent with the particular intent.").

Petitioners finally contend that the county's interpretation of UCDC 152.277(E) to allow truck stops in the TC zoning district is inconsistent with a periodic review order issued by LCDC or a periodic review report issued by DLCD. Petitioners do not explain how the order or policy illustrates the "purpose" or the "underlying policy" of the regulation or how UCDC 152.277(E) implements the order or report under ORS 197.829(1). We reject that contention without discussion.

We conclude that LUBA did not err under ORS 197.829(1) in deferring to the county's interpretation of its development code provisions.

Affirmed.