SHORR, J.
*241 In this land use case, petitioner, a citizen of Hood River, seeks review of a Land Use Board of Appeals (LUBA) order that affirmed the City of Hood River's decision to approve a quasi-judicial zone change to a city park from Open Space/Public Facilities (OS/PF) to Urban High Density Residential (R-3). In affirming the city's decision, LUBA deferred to the city's interpretation of Hood River Comprehensive Plan (HRCP) Goal 8 Policy 1 under ORS 197.829(1)[1] and Siporen v. City of Medford , 349 Or. 247, 259, 243 P.3d 776 (2010). On review, petitioner argues that LUBA erred in granting the city deference because the city's interpretation of the policy was inconsistent with the policy's express language, purpose, and underlying policies. We conclude that LUBA's order was "unlawful in substance," ORS 197.850(9)(a), because LUBA erred in deferring to the city's interpretation of its policy, which did not plausibly account for the text and context of the policy. Our decision obviates the need to address petitioner's second and third assignments of error. We therefore reverse and remand.
We take the uncontested facts from LUBA's order.
*1115 Reinert v. Clackamas County , 286 Or. App. 431, 432, 398 P.3d 989 (2017). The property at issue in this case is Morrison Park, a city park that was zoned OS/PF under Goal 8 of the HRCP, which states that the city's goal is to "satisfy the recreational needs of the citizens of the community and visitors to the area." Goal 8 Policy 1 provides that "[e]xisting park sites will be protected from incompatible uses and future expansion alternatives at some sites will be developed."
*242 On August 24, 2015, the city council adopted and incorporated into the HRCP a new Buildable Lands Inventory and a Housing Needs Analysis, which concluded that the city had enough land within its urban growth boundary to meet expected growth within the next 20 years, but noted that the city's supply of land zoned for high-density residential land is limited. The reports indicated that, if growth exceeds expectations, the city will exhaust its supply of buildable land. Among other solutions, the Housing Needs Analysis recommends that the city identify "surplus city land for development of government-subsidized housing[.]" On September 14, 2015, the city council approved a housing strategy to develop affordable housing, which included an action to rezone land to allow additional high-density residential development and identify publicly owned lands that could be used for affordable housing.
On August 16, 2016, the city submitted an application to rezone Morrison Park from OS/PF to R-3. The planning commission conducted three public hearings, and ultimately voted to recommend approval of the zone change. The city council subsequently conducted two public hearings on the recommendation and, on May 22, 2017, voted to approve the rezone. In doing so, the city rejected the argument that Goal 8 Policy 1 precludes the rezoning of Morrison Park because allowing the park to be developed for high-density residential development fails to protect the park from incompatible uses. After finding that that policy is ambiguous in several respects, the city determined that the most logical interpretation of the policy is that it requires the protection of parks from incompatible uses on other nearby properties that could adversely affect the parks, but does not prevent rezoning of the parks themselves. The city rejected the argument that Goal 8 Policy 1 requires all existing parks, including Morrison Park, to be protected from incompatible uses of the park , as opposed to protecting parks from incompatible nearby uses on surrounding land. The city explained:
"We interpret this policy as providing a tool that the City can use to protect its parks from near-by incompatible uses through zoning of surrounding lands and permit reviews for near-by properties. The definition of 'protect' in the Comprehensive Plan supports our interpretation because *243 the focus of the term protect is on 'future intended use.' As we make clear in this decision, our 'future intended use' for this property is an affordable housing project. We reject any interpretation of this policy that suggests the City Council cannot rezone a park to some non-park designation."
Ultimately, the city concluded that Goal 8 Policy 1 is irrelevant to the city's application to rezone Morrison Park from OS/PF to R-3.
Petitioner appealed the city's decision to LUBA, arguing that the city incorrectly interpreted Goal 8 Policy 1 by narrowing the scope of "incompatible uses" to refer only to uses on properties outside of the park sites themselves. Petitioner contended that the city's interpretation impermissibly inserted into the policy a qualification-incompatible uses on other properties -that was omitted.[2] Petitioner also argued to LUBA that the *1116 city's interpretation was inconsistent with the purpose of the goal and the policies underlying the goal, which are to preserve public spaces. Petitioner relied on other goals-such as Goal 5 (Open Spaces, Scenic and Historic Areas and Natural Resources) and Goal 4 (Forest Lands)-as context for a more "protective" interpretation of Goal 8 Policy 1. Thus, petitioner contended that the city's interpretation of the policy was not entitled to deference under ORS 197.829(1) and Siporen .
LUBA rejected petitioner's contentions, concluding that the city's interpretation of the policy was plausible and was not inconsistent with the policy's express language, purpose, or underlying policies. LUBA concluded that Goal 8 Policy 1 is ambiguous and susceptible to more than one plausible interpretation, and explained that both petitioner's and *244 the city's proffered interpretations required "paraphrasing the policy in terms that cannot avoid inserting language." LUBA concluded that the city's narrower interpretation is at "least as consistent with the express language of the policy as petitioner's preferred interpretation" and that it is not inconsistent with the policy's express language, purpose, or underlying policies.
Petitioner seeks review of LUBA's order, contending that LUBA erred in giving deference to the city's interpretation of the policy, and that, for that reason, LUBA's order was unlawful in substance. Under ORS 197.829(1) and Siporen , 349 Or. at 259, 243 P.3d 776, LUBA must defer to a local government's interpretation of its comprehensive plan and land use regulations, unless the board determines that the local government's interpretation is inconsistent with the express language, purpose, or underlying policy of the comprehensive plan or land use regulation.
"Whether the city's interpretation of its comprehensive plan is inconsistent with the plan, or the purposes or policies underlying that plan, 'depends on whether the interpretation is plausible, given the interpretive principles that ordinarily apply to the construction of ordinances under the rules of PGE [v. Bureau of Labor and Industries , 317 Or. 606, 610-12, 859 P.2d 1143 (1993),] as modified by State v. Gaines , 346 Or. 160, 171-72, 206 P.3d 1042 (2009).' "
Friends of the Hood River Waterfront v. City of Hood River , 263 Or. App. 80, 88-89, 326 P.3d 1229 (2014) (quoting Setniker v. Polk County , 244 Or. App. 618, 633-34, 260 P.3d 800, rev. den. , 351 Or. 216, 262 P.3d 402 (2011) (brackets in Setniker ) ). As we explained in Kaplowitz v. Lane County , 285 Or. App. 764, 775, 398 P.3d 478 (2017),
"[a]lthough the analysis echoes the statutory construction methodology set out in PGE and Gaines , we emphasize that the plausibility determination under ORS 197.829(1) is not whether a local government's code interpretation best comports with principles of statutory construction. Rather, the issue is whether the local government's interpretation is plausible because it is not expressly inconsistent with the text of the code provision or with related policies that 'provide the basis for' or that are 'implemented' by the code *245 provision, including any ordained statement of the specific purpose of the code provision at issue."
(Emphasis in original.)
The standard of review under ORS 197.829(1) and Siporen is "highly deferential" to the city, and the "existence of a stronger or more logical interpretation does not render a weaker or less logical interpretation 'implausible.' " Mark Latham Excavation, Inc. v. Deschutes County , 250 Or. App. 543, 555, 281 P.3d 644 (2012). "Put simply, our task on review in this case is to determine whether the city's interpretation of [Goal 8 Policy 1] 'plausibly accounts for the text and context' of [that provision]." Friends of the Hood River Waterfront , 263 Or. App. at 89, 326 P.3d 1229 (quoting Siporen , 349 Or. at 262, 243 P.3d 776 ).
The city interpreted Goal 8 Policy 1 as calling for the protection of park sites from incompatible uses on nearby properties that could adversely affect the parks, rather than precluding incompatible uses on the park sites themselves. Thus, the city determined that Goal 8 Policy 1 did not prevent the rezoning of Morrison Park from OS/PF to R-3, *1117 because rezoning the park does not constitute an incompatible use on nearby land. In making its determination, the city concluded that Goal 8 Policy 1 is ambiguous in several respects. First, due to the lack of punctuation in the policy language, it is susceptible to two plausible interpretations: (1) "Existing park sites will be protected from incompatible uses[,] and future expansion alternatives at some sites will be developed"; or (2) "[e]xisting park sites will be protected from incompatible uses and future expansion[;] alternatives at some sites will be developed." The city determined that the first option was the more logical option, because the city council that adopted the policy would not have intended to preclude the "future expansion" of parks. Applying that grammatical construct to the policy, the city then interpreted whether its first clause-"[e]xisting park sites will be protected from incompatible uses"-applies to incompatible uses on the park sites themselves or whether the policy directs the city to protect park sites solely from incompatible uses on other nearby properties. The city determined that the policy was meant to be a tool that the city could use to *246 protect its parks from nearby incompatible uses through the zoning of surrounding lands and permit-reviews for nearby properties. Thus, the city determined that the policy did not apply to the rezoning of the park sites themselves.
Petitioner contends that the city's interpretation is inconsistent with the express language of the policy, which petitioner contends is a broad and unambiguous prohibition on all incompatible uses that do not serve to protect parks, including incompatible uses of the park sites themselves. She argues that, by narrowing the scope of the policy to apply only to incompatible uses on nearby properties, the city improperly added qualifying language to the policy to "reach its preferred interpretation of removing park protection," in violation of ORS 174.010. Petitioner also contends that the city's interpretation of the policy violates the policy's purpose and the underlying policies of Goal 8 Policy 1. She argues that the context and history of the policy "strongly suggest that the 1983 enacting council intended firm protections of an inventoried park for recreational use."[3]
We agree that the city's interpretation of the policy-that it applies only to incompatible uses on nearby properties-is implausible, when considering the text and context of the policy. The stated purpose of Goal 8 is to satisfy the recreational needs of the citizens of Hood River and visitors to the area. The goal contains seven policies, which direct the city to satisfy recreational needs through the development and maintenance of public parks. Some of those policies are aimed at maximizing access to park sites, and they are phrased as aspirational goals-viz. , "[w]hen feasible, *247 recreational opportunities and park sites will be located so as to be accessible to a maximum number of people," and "[t]he development of parks which are accessible by means of walking or bicycling is encouraged." Goal 8 Policy 1, which discusses the protection of existing park sites, is phrased as a mandatory requirement: "Existing park sites will be protected from incompatible uses."[4] (Emphasis added.) The HRCP defines the term "protect" as to "[s]ave or shield from loss, destruction, or injury or for future intended use." *1118 The city does not dispute that, under Goal 8 Policy 1, it has a duty to protect existing park sites from incompatible uses.[5] However, as noted above, it argues that its duty to protect is limited to regulating uses on nearby properties, and does not extend to regulating the use of park sites themselves. In other words Goal 8 Policy 1's protections simply do not apply to the instant rezoning application. The problem with the city's interpretation is that it adds language to the express text of Goal 8 Policy 1 to limit the preservation of parks, which is inconsistent with Goal 8 Policy 1's mandatory text-"[e]xisting park sites will be protected from incompatible uses" (emphasis added)-and the purpose of Goal 8-to satisfy the city's recreational needs by developing and maintaining public parks.
The city's interpretation requires the addition of terms not present in Goal 8 Policy 1's text-incompatible uses means incompatible uses only on nearby properties . Although we are mindful that our task is not to determine "whether a local government's code interpretation best comports with principles of statutory construction," Kaplowitz , 285 Or. App. at 775, 398 P.3d 478 (emphasis added), we do look to those principles in determining whether the city's interpretation plausibly accounts for the policy's text. Here, Goal 8 Policy 1 does not limit the scope of its applicability, and a plain and natural reading of the policy suggests that there are no limitations on the phrase "incompatible uses." Nevertheless, the city has inserted language to place limitations on that phrase. By narrowing the application of the policy to apply *248 only to nearby properties, the city's interpretation allows for incompatible uses within existing park sites. Such an interpretation effectively rewrites the explicit text of the policy so that the area surrounding the park must be compatible with the recreational needs of the citizens of the community and visitors to the area, while the area within the park does not need to be compatible with those needs at all. This cannot be squared with Goal 8 Policy 1's text, when viewed in the context of Goal 8's purpose of maintaining and developing public parks. See, e.g. , Friends of Hood River Waterfront , 263 Or. App. at 90, 326 P.3d 1229 (holding city's interpretation implausible where it added words not originally included in text of implementation strategy); see also Gould v. Deschutes County , 272 Or. App. 666, 681, 362 P.3d 679 (2015) (county's interpretation of code provision, which required county to examine applicant's fault as to all conditions of approval, was implausible because it narrowed the scope of considerations to exclude certain conditions of approval).[6] *1119 *249 In sum, we conclude that LUBA's order deferring to the city's interpretation of Goal 8 Policy 1 is unlawful in substance, ORS 197.850(9)(a), and we reverse and remand for further proceedings. See Gould , 272 Or. App. at 681, 362 P.3d 679 (reversing and remanding LUBA's decision, which deferred to an implausible interpretation of a land use regulation).
Reversed and remanded.

ORS 197.829 provides, in part:
"(1) The Land Use Board of Appeals shall affirm a local government's interpretation of its comprehensive plan and land use regulations, unless the board determines that the local government's interpretation:
"(a) Is inconsistent with the express language of the comprehensive plan or land use regulation;
"(b) Is inconsistent with the purpose for the comprehensive plan or land use regulation;
"(c) Is inconsistent with the underlying policy that provides the basis for the comprehensive plan or land use regulation; or
"(d) Is contrary to a state statute, land use goal or rule that the comprehensive plan provision or land use regulation implements."

As we explain below, 294 Or. App. at 244, 430 P.3d at 1116, we apply the principles that ordinarily apply to construing the text of a statute in determining whether the city's interpretation is plausible and entitled to deference. Friends of the Hood River Waterfront v. City of Hood River , 263 Or. App. 80, 88-89, 326 P.3d 1229 (2014). Those principles include the one embodied in ORS 174.010, which is based on the "express language" of a provision. Western Land & Cattle, Inc. v. Umatilla County , 230 Or. App. 202, 210, 214 P.3d 68 (2009). ORS 174.010 provides:
"In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all."

As support for her contextual arguments, petitioner relies on other goals in the HRCP, such as such as Goal 4 (Forest Lands) and Goal 5 (Open Spaces, Scenic and Historic Areas, and Natural Resources). She argues that those goals demonstrate the city council's desire to protect and preserve forests, open spaces, and other natural areas, some of which are located on public parks and are intended to be used for recreational purposes. However, as we explained in Kaplowitz , 285 Or. App. at 775, 398 P.3d 478, whether the city's interpretation of Goal 8 Policy 1 is plausible depends on whether it is inconsistent with the "text of the code provision or with related policies that 'provide the basis for,' or that are 'implemented' by the code provision, including any ordained statement of the specific purpose of the code provision at issue." (Emphasis added.) Here, petitioner fails to demonstrate that Goals 4 and 5 are related policies that provide the basis for Goal 8 Policy 1, or are policies implemented by Goal 8 Policy 1. We therefore focus our analysis on the text of Policy 1, in the context of Goal 8 as a whole.

HRCP Goal 2 expressly defines the term "will" as a mandatory requirement.

Nor does the city dispute that, for the purpose of this dispute, Morrison Park is an "existing" park.

In adopting its narrow interpretation of Goal 8 Policy 1, the city rejected petitioner's broad construction of the provision, concluding that "[t]he necessary implication of the opponents' interpretation is that no park property can ever be rezoned to a non-park designation." The city explained:
"The definition of 'protect' in the Comprehensive Plan supports our interpretation because the focus of the term protect is on 'future intended use.' As we make clear in this decision, our 'future intended use' for this property is an affordable housing project. We reject any interpretation of this policy that suggests the City Council cannot rezone a park to some non-park designation."
LUBA agreed that petitioner's interpretation was untenable:
"Petitioner's preferred interpretation would suggest that the 1983 city council, in adopting the HRCP Goal 8, Policy 1, meant to tie the hands of future city councils, and to prohibit the city from ever rezoning a city park to allow for a non-park use, in effect to require the city to maintain all existing city parks as city parks in perpetuity, unless and until HRCP Goal 8, Policy 1 is repealed. That represents an extraordinary gloss to place on HRCP Goal 8, Policy 1. The city council, in justifying its narrower interpretation, rejected the implication that the 1983 city council intended to prohibit future city councils from rezoning park sites to allow non-park uses."
The dissent agrees with LUBA and the city. However, as noted, the question on review before both LUBA and us is not whether petitioner's interpretation of Goal 8 Policy 1 is plausible; it is whether the city's interpretation is plausible and entitled to deference. Here, whatever the implications of petitioner's proffered interpretation, the ultimate result of the city's interpretation is that Goal 8 Policy 1 simply does not apply to incompatible uses on a park site itself. As explained above, that is inconsistent with the policy's text and context. We note that our opinion is limited to determining that the city's interpretation narrowing the scope of Goal 8 Policy 1's applicability to only incompatible uses near Morrison Park, and not in the park itself, is implausible and not entitled to deference, and we express no opinion as to the plausibility of petitioner's proffered interpretation.