Argued and submitted September 22, reversed and remanded
December 16, 2020

## Susan Garrett CROWLEY,
*Petitioner,*

*v.*

## CITY OF HOOD RIVER,
*Respondent.*

## Land Use Board of Appeals
2019054; A174363

480 P3d 1007

Petitioner seeks review of a Land Use Board of Appeals (LUBA) order that affirmed the City of Hood River's decision to approve a zone change to a portion of city park from Open Space/Public Facilities to Urban High Density Residential. In affirming the city's decision, LUBA deferred to the city's interpretation of a policy within the Hood River Comprehensive Plan regarding the use of existing park sites. On review, petitioner argues that LUBA erred in deferring to the city because the city's interpretation of the policy was inconsistent with the policy's express language and purpose. *Held*: LUBA's order was unlawful in substance because LUBA erred in deferring to the city's interpretation of its policy. The city's interpretation did not plausibly account for the text and context of the policy.

Reversed and remanded.

Susan Garrett Crowley argued the cause and filed the brief for petitioner *pro se.*

Daniel Kearns argued the cause and filed the brief for respondent.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

TOOKEY, J.

Reversed and remanded.

Armstrong, P. J., dissenting.

**TOOKEY, J.**

In this land use case, petitioner seeks review of a Land Use Board of Appeals (LUBA) order that affirmed the City of Hood River's decision to approve a quasi-judicial zone change to a portion of a city park from Open Space/Public Facilities (OS/PF) to Urban High Density Residential (R-3). In affirming the city's decision, LUBA deferred to the city's interpretation of Hood River Comprehensive Plan (HRCP) Goal 8 Policy 1, under ORS 197.829(1)[1] and *Siporen v. City of Medford*, 349 Or 247, 243 P3d 776 (2010).

On review, in her first assignment of error, petitioner argues that LUBA erred in granting the city deference, because the city's interpretation of the policy was inconsistent with the policy's express language and purpose. We conclude that LUBA's order was "unlawful in substance," ORS 197.850(9)(a), because LUBA erred in deferring to the city's interpretation of its policy, which did not plausibly account for the text and context of the policy. Our decision obviates the need to address other issues raised in petitioner's first assignment of error and petitioner's second assignment of error. We therefore reverse and remand.

## I.   BACKGROUND

As context for our analysis of this petition for review, we recount the pertinent historical facts, which we largely draw from *Crowley v. City of Hood River*, 294 Or App 240, 430 P3d 1113 (2018) (*Crowley I*) and the LUBA order on review.

---

[1] ORS 197.829 provides, in part:

"(1) The Land Use Board of Appeals shall affirm a local government's interpretation of its comprehensive plan and land use regulations, unless the board determines that the local government's interpretation:

"(a) Is inconsistent with the express language of the comprehensive plan or land use regulation;

"(b) Is inconsistent with the purpose for the comprehensive plan or land use regulation;

"(c) Is inconsistent with the underlying policy that provides the basis for the comprehensive plan or land use regulation; or

"(d) Is contrary to a state statute, land use goal or rule that the comprehensive plan provision or land use regulation implements."

## A.   *Morrison Park and HRCP Goal 8*

The property at issue in this case is a section of Morrison Park. Morrison Park sits on various tax lots, including tax lot 700 (TL 700), which is approximately 5.33 acres. Morrison Park was zoned OS/PF under Goal 8 of the HRCP. Goal 8 states that the city's goal is to "satisfy the recreational needs of the citizens of the community and visitors to the area." Goal 8 Policy 1 provides that "[e]xisting park sites will be protected from incompatible uses and future expansion alternatives at some sites will be developed." The HRCP defines the term "protect" as to "[s]ave or shield from loss, destruction, or injury or for future intended use." We have previously observed that Goal 8 Policy 1 is phrased as a "mandatory requirement." *Crowley I*, 294 Or App at 247.

Goal 8 also contains other policies which are phrased in terms of "aspirational goals." *Id.* at 246. Specifically, Goal 8 Policy 2 provides that, "[w]hen feasible, recreational opportunities and park sites will be located so as to be accessible to a maximum number of people," and Goal 8 Policy 3 provides that "[t]he development of parks which are accessible by means of walking or bicycling is encouraged."

## B.   *The City's Decision to Rezone a Portion of TL 700*

On September 14, 2015, the city council approved a housing strategy to develop affordable housing, which included an action to rezone land to allow additional high-density residential development and identify publicly owned lands that could be used for affordable housing.

On August 16, 2016, the city submitted an application to rezone a portion of TL 700 from OS/PF to R-3, and on May 22, 2017, the city voted to approve rezoning 5.03 acres of TL 700. In doing so, the city rejected the argument that Goal 8 Policy 1 precludes the rezoning because allowing the park to be developed for high-density residential development fails to protect the park from incompatible uses. After finding that that policy is ambiguous in several respects, the city determined that the most logical interpretation of the policy is that it requires the protection of parks from incompatible uses on other nearby properties that could adversely affect the parks, but does not prevent rezoning

of the parks themselves. The city rejected the argument that Goal 8 Policy 1 requires all existing parks, including Morrison Park, to be protected from incompatible uses *of the park*, as opposed to protecting parks from incompatible nearby uses on surrounding land.

C.   *Petitioner's First Appeal to LUBA*

Petitioner appealed the city's decision to LUBA, arguing that the city incorrectly interpreted Goal 8 Policy 1 by narrowing the scope of "incompatible uses" to refer only to uses on properties outside of park sites themselves. Petitioner contended that the city's interpretation impermissibly inserted into the policy a qualification—*i.e.*, "incompatible uses on other properties"—that had been omitted.

LUBA rejected petitioner's contention. It concluded that the city's interpretation of the policy was plausible and was not inconsistent with the policy's express language, purpose, or underlying policies.

D.   *The Court of Appeals Decision in* Crowley I

Petitioner sought review of LUBA's decision, leading to our decision in *Crowley I*. In *Crowley I*, we determined that the city's interpretation of Goal 8 Policy 1—*i.e.*, "that it applies only to incompatible uses on *nearby* properties"—was "implausible, when considering the text and context of the policy." 294 Or App at 246 (emphasis in original). We explained:

> "The problem with the city's interpretation is that it adds language to the express text of Goal 8 Policy 1 to *limit* the preservation of parks, which is inconsistent with Goal 8 Policy 1's mandatory text—'[e]xisting park sites *will* be protected from incompatible uses'—and the purpose of Goal 8—to satisfy the city's recreational needs by developing and maintaining public parks."

*Id.* at 247 (emphases and brackets in original). We further explained:

> "The city's interpretation requires the addition of terms not present in Goal 8 Policy 1's text—incompatible uses means incompatible uses *only on nearby properties*. *** Here, Goal 8 Policy 1 does not limit the scope of its

applicability, and a plain and natural reading of the policy suggests that there are no limitations on the phrase 'incompatible uses.' Nevertheless, the city has inserted language to place limitations on that phrase. By narrowing the application of the policy to apply only to nearby properties, the city's interpretation allows for incompatible uses *within* existing park sites. Such an interpretation effectively rewrites the explicit text of the policy so that the area surrounding the park must be compatible with the recreational needs of the citizens of the community and visitors to the area, while the area within the park does not need to be compatible with those needs at all. This cannot be squared with Goal 8 Policy 1's text, when viewed in the context of Goal 8's purpose of maintaining and developing public parks."

*Id.* at 247-48 (emphases in original).

Accordingly, in *Crowley I*, we determined that "LUBA's order deferring to the city's interpretation of Goal 8 Policy 1 was unlawful in substance, ORS 197.850(9)(a)," and we reversed and remanded to LUBA for further proceedings. *Id.* at 249.

E.  *LUBA's Remand to the City*

After we remanded to LUBA, LUBA remanded to the city for further proceedings, specifically for the city to adopt a sustainable interpretation of Goal 8 Policy 1 and to apply that policy, as interpreted, to the application before it.

F.  *The City's Quasi-Judicial Proceeding on Remand and Ordinance Number 2048 Rezoning TL 700*

On remand, the city issued findings of fact and conclusions of law in a quasi-judicial proceeding, in which the city determined that the rezoning of TL 700 to R-3 was in compliance with the HRCP and, specifically, consistent with Goal 8 Policy 1.

In its findings of fact and conclusions of law, the city explained that, in its view, Goal 8 Policy 1 was "ambiguous" and that, "as a matter of general policy," the city did not

"interpret any of the Goal 8 policies as prohibiting the Council from making the policy decision that a portion of a particular park property is suited to a non-park use and

rezoning it for a future non-park development, so long as that non-park use is suitably conditioned to render it compatible and protect the park."

The City explained that Morrison Park is an "existing park site" within the meaning of Policy 1. The city explained, however, that, as it interpreted the word "protected" in Goal 8 Policy 1, that policy did not impose a prohibition "of non-park uses" on park sites. Rather, in the city's view, "the code clearly anticipates that certain non-park uses are appropriate for park sites" and that "some non-park uses are appropriate 'future intended uses' and can be made compatible with underlying park uses."[2]

The city also determined that the "affordable housing project that is envisioned for a portion of Morrison Park," although a "non-park use," is not "incompatible" with the use of "TL 700 as a city park, especially when conditioned to ensure that it is compatible with park uses on the balance of TL 700." The city explained its reasoning, in pertinent part, as follows:

> "Several other Goal 8 policies provide important context and support ***. In particular, Goal 8, Policy 2 requires that 'recreational opportunities and park sites will be located so as to be accessible to a maximum number of people.' Policy 3 calls for the 'development of parks which are accessible by means of walking or bicycling.' *** It is critical, in our view, that urban density housing, such as the affordable housing project anticipated for part of this site, be located in close proximity to and integrated with city parks such as this one. *** By limiting the extent of non-park development to 2.76 acres, we achieve Goal 8, Policy 1's directive to protect today's 10.83-acre Morrison Park site from incompatible uses, and, consistent with Policies 2 and 3, this affordable housing project will be integrated with this existing park site to foster walking and bicycle use by the future residents, improving the park's accessibility to meet the recreational needs of Hood River's citizens and visitors."

_____

[2] The city determined that the "code clearly anticipates that certain non-park uses are appropriate for park sites" because, among other reasons, (1) "Policy 1 requires existing park sites to be 'protected' from incompatible uses and does not simply prohibit all non-park uses" and (2) "the definition of 'protect' anticipates the need to protect park sites for future intended uses, which *** include[s] future intended park as well as non-park uses."

The city ultimately adopted Ordinance Number 2048, which approves a quasi-judicial zone change of the portion of Morrison Park situated on TL 700 from OS/PF to R-3 and determines that, as conditioned, doing so is consistent with HRCP Goal 8 Policy 1. The ordinance includes conditions of approval that (1) a maximum of 2.76 acres of TL 700 may be developed as affordable housing, and the "balance of tax Lot 700 shall be retained and used only for park uses"; and (2) the city shall work with a housing agency to develop affordable housing on the property.

### G.   *Petitioner's Second Appeal to LUBA*

After passage of Ordinance Number 2048, petitioner again appealed to LUBA. Petitioner contended, among other points, that the city's interpretation of Goal 8 Policy 1 is inconsistent with the text, purpose, and underlying policy of HRCP Goal 8 Policy 1 and, thus, not affirmable even under the deferential standard of review that LUBA must apply.

LUBA rejected petitioner's appeal, determining that the city's interpretation of HRCP Goal 8 Policy 1 accounts for the text, context, purpose, and policy of HRCP Goal 8 Policy 1.

LUBA explained that, under the city's interpretation of the word "protect," "public park sites will be protected for public park use, unless and until the city determines that a portion of the park site should be used for a different, non-park use, and that non-park use can be made compatible with the remaining park uses." LUBA deferred to that interpretation of "protect," given the "deferential standard of review in ORS 197.829(1)."

Regarding the city's consideration of whether the rezoning of TL 700 was "incompatible" under Goal 8 Policy 1, LUBA determined that, when considering "HRCP Goal 8, Policy 1, in context with HRCP Goal 8, Policies 2 and 3, the city's interpretation of 'incompatible' is consistent with the policy's express language, its purpose, and underlying policy." LUBA reasoned that the city "reserved 8.07 acres of Morrison Park for public park use," that the "2.76 acres for residential use is conditioned to be compatible with park use

on the remaining park property," and that the city "empha-size[d] that siting multi-family affordable housing adjacent to the park will facilitate use of the park by residents of the affordable housing development, thus promoting HRCP Goal 8 polices [2 and 3] of making parks accessible to a maximum number of people and developing parks that are accessible by walking or bicycling."

Additionally, LUBA agreed with the city that the "park site" can be protected "without maintaining the entire land area of Morrison Park for public park use." LUBA rea-soned that because "the park site is protected from *incom-patible* uses, some *compatible* uses are presumably allowed, suggesting that some compatible non-park uses are allowed." LUBA further noted that the term "site" is "sometimes used in land use regulations to define the location or placement of particular development," and in that context, "'site' is less than the total land area of the particular parcel or lot."

## II.   ANALYSIS

As noted above, petitioner seeks review of LUBA's order affirming the city's decision to approve a quasi-judicial zone change to a portion of a city park from Open Space/ Public Facilities (OS/PF) to Urban High Density Residential (R-3).

Under ORS 197.829(1) and *Siporen*, 349 Or at 259, LUBA "must defer to a local government's interpretation of its comprehensive plan and land use regulations, unless the board determines that the local government's interpre-tation is inconsistent with the express language, purpose, or underlying policy of the comprehensive plan or land use regulation." *Crowley I*, 294 Or App at 244. In *Crowley I*, we explained:

> "Whether the city's interpretation of its comprehensive plan is inconsistent with the plan, or the purposes or pol-icies underlying that plan, depends on whether the inter-pretation is plausible, given the interpretive principles that ordinarily apply to the construction of ordinances under the rules of *PGE v. Bureau of Labor and Industries*, 317 Or

606, 610-12, 859 P2d 1143 (1993), *as modified by State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009)."

*Id.* (brackets and internal quotation marks omitted). As we explained in *Kaplowitz v. Lane County*, 285 Or App 764, 775, 398 P3d 478 (2017),

> "[a]lthough the analysis echoes the statutory construction methodology set out in *PGE* and *Gaines*, we emphasize that the plausibility determination under ORS 197.829(1) is not whether a local government's code interpretation best comports with principles of statutory construction. Rather, the issue is whether the local government's interpretation is plausible because it is not expressly *inconsistent* with the text of the code provision or with related policies that 'provide the basis for' or that are 'implemented' by the code provision, including any ordained statement of the specific purpose of the code provision at issue."

(Emphasis in original.)

The standard of review under ORS 197.829(1) and *Siporen* is "highly deferential" to the city, and the "existence of a stronger or more logical interpretation does not render a weaker or less logical interpretation 'implausible.'" *Mark Latham Excavation, Inc. v. Deschutes County*, 250 Or App 543, 555, 281 P3d 644 (2012). "Put simply, our task on review in this case is to determine whether the city's interpretation of Goal 8 Policy 1 plausibly accounts for the text and context of that provision." *Crowley I*, 294 Or App at 245 (brackets and internal quotation marks omitted).

On appeal, petitioner contends that LUBA erred in giving deference to the city's interpretation of Goal 8 Policy 1, because the city's interpretation of Goal 8 Policy 1 is inconsistent with the policy's express language and purpose. In petitioner's view, LUBA affirmed an implausible interpretation of Goal 8 Policy 1, because the city's interpretation added terms that are not present. For example, petitioner contends that, as interpreted by the city, Goal 8 Policy 1 only protects "certain areas" of the park site.

The city, for its part, argues that Goal 8 Policy 1 contains three "undefined operative terms that are inherently ambiguous"—*i.e.*, "park sites," "protected," and "incompatible uses"—and that the city's interpretation of those

terms and what Goal 8 Policy 1 requires was "thorough and plausible."

In this case, we conclude that LUBA's order deferring to the city's interpretation of Goal 8 Policy 1 is unlawful in substance, ORS 197.850(9)(a), and we reverse and remand for further proceedings.

As explained by LUBA, under the city's interpretation of Goal 8 Policy 1, "public park sites will be protected for public park use, unless and until the city determines that a portion of the park site should be used for a different, non-park use, and that non-park use can be made compatible with the remaining park uses." Here, the city determined that the "affordable housing project that is envisioned for a portion of Morrison Park," although a "non-park use," is not "incompatible" with the use of "TL 700 as a city park," and that the rezoning was achieving "Goal 8, Policy 1's directive to protect today's 10.83-acre Morrison Park site from incompatible uses" because it was limiting "the extent of non-park development to 2.76 acres" of TL 700.

In this case, as in *Crowley I*, the difficulty with the city's interpretation is that "it adds language to the express text of Goal 8 Policy 1 to *limit* the preservation of parks, which is inconsistent with Goal 8 Policy 1's mandatory text—'[e]xisting park sites will be protected from incompatible uses.'" 294 Or App at 247 (emphasis in original). As noted above, in *Crowley I*, we observed that "Goal 8 Policy 1 does not limit the scope of its applicability, and a plain and natural reading of the policy suggests that there are no limitations on the phrase 'incompatible uses.'" *Id.* Therefore, in *Crowley I*, we rejected an interpretation of Goal 8 Policy 1 that "inserted language to place limitations on that phrase," which would have allowed "for incompatible uses *within* existing park sites." *Id.* (emphasis in original).

Here, the city's interpretation of Goal 8 Policy 1, in effect, rewrites Goal 8 Policy 1 to provide that "*portions of* existing park sites will be protected from incompatible uses," and would allow incompatible uses *within* existing park sites, as it would allow portions of existing park sites to be developed in a manner that is inconsistent with use of those

portions as park.[3] That cannot be squared with the "plain and natural reading" of Goal 8 Policy 1, which suggests that there are no limitations on the phrase "incompatible uses." *Id.*; *see also Friends of the Hood River Waterfront v. City of Hood River*, 263 Or App 80, 90, 326 P3d 1229 (2014) (holding city's interpretation implausible where it added words not originally included in text of implementation strategy). Nor can it be squared with Goal 8 Policy 1's text, "when viewed in the context of Goal 8's purpose of maintaining and developing public parks," *Crowley I*, 294 Or App at 248, because, rather than maintaining and developing existing park sites, it would allow the city to reduce the size of existing park sites.

Put another way, it is simply not plausible that, by developing 2.76 acres of Morrison park for "non-park" uses, such as housing, the city "achieves" Goal 8 Policy 1's "directive to protect [the] 10.83-acre Morrison Park site from incompatible uses," as the city contends.[4] Although we are

---

[3] The city does not undertake a meaningful effort to argue that the 2.76 acres of TL 700 that are anticipated to be used for housing under Ordinance Number 2048 will be compatible with park use on that 2.76 acres. We do not foreclose, however, the possibility that some nonpark uses of a particular portion of a park site could be compatible with park use on that particular portion.

[4] The dissent faults the majority for "assum[ing] that Goal 8 Policy 1 prohibits reduction of the entire area of an existing park site." 308 Or App at 58 (Armstrong, P. J., dissenting). In the dissent's view, "'site' can refer to an area that is less than the entire area of a lot or parcel," and, therefore, the city can reduce the size of Morrison Park by building housing on 2.76 acres of it while still protecting Morrison Park from incompatible uses. 308 Or App at 59 (Armstrong, P. J., dissenting). But it is not plausible to assert that the 2.76 acres of Morrison Park that the city intends to use for housing is not part of the Morrison Park "park site." That the dissent does not articulate any limitation on its interpretation of "park site" demonstrates why its interpretation of "park site" is not plausible: Would building housing on 5.83 acres of Morrison Park while preserving five acres for use as a park protect the Morrison Park "park site" from incompatible uses? It seems that the only plausible answer is no, but under the dissent's interpretation, it very well could be yes, because in the dissent's view Goal 8 Policy 1 does not prohibit reducing the size of an existing park.

The dissent also argues that we should "tread carefully when applying ORS 174.010 under a *Siporen* standard of review." 308 Or App at 59 n 2 (Armstrong, P. J., dissenting). ORS 174.010 provides that, "[i]n the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted." We have historically considered the principles set forth in ORS 174.010 when determining whether a city's construction of its policy is plausible, including in our decision in *Crowley I. Crowley I*, 294 Or App at 243 n 2 (noting "we apply the principles that ordinarily apply to construing the text

mindful that our task is not to determine "whether a local government's code interpretation *best* comports with principles of statutory construction, we do look to those principles in determining whether the city's interpretation plausibly accounts for the policy's text." *Id.* at 247 (emphasis in original; citation omitted).

The city is perhaps correct that placing residential housing next to a park promotes the "aspirational goals" referenced in Goal 8 Policies 2 and 3—*i.e.*, that "[w]hen feasible, recreational opportunities and park sites will be located so as to be accessible to a maximum number of people," and that "[t]he development of parks which are accessible by means of walking or bicycling is encouraged." *Id.* at 246-47. But it is not plausible that promotion of those aspirational goals excuses the city from the mandatory obligation imposed by Goal 8 Policy 1 to "protect" park sites from "incompatible uses."

In sum, we conclude that LUBA's order deferring to the city's interpretation of Goal 8 Policy 1 is unlawful in substance, ORS 197.850(9)(a), and we reverse and remand for further proceedings.

Reversed and remanded.

**ARMSTRONG, P. J.,** dissenting.

Goal 8 Policy 1 of Hood River's comprehensive plan provides that "[e]xisting park sites will be protected from incompatible uses." In the city's view, Goal 8 Policy 1 permits the rezoning of a 5-acre tax lot, which in turn is part of the city's 10.83-acre Morrison Park, to residential use when the rezoning is conditioned as it is in this case—for affordable housing on a maximum of 2.76 acres of the rezoned tax

---

of a statute in determining whether the city's interpretation is plausible," including "the one embodied in ORS 174.010"); *see also Western Land & Cattle, Inc. v. Umatilla Cty.*, 230 Or App 202, 210, 214 P3d 68 (2009) (noting that "in determining whether a local government's interpretation of its land use plan or regulation is inconsistent with the express language of the comprehensive plan or land use regulation under ORS 197.829(1)(a), we apply the statutory construction principles in ORS 174.010 and ORS 174.020(2)" (internal quotation marks omitted)); *Friends of the Hood River Waterfront*, 263 Or App at 90 (holding city's interpretation implausible where it added words not originally included in text of implementation strategy). The approach that we take in this opinion is in accordance with that precedent.

lot. The city reasons that the future nonpark development contemplated by the rezoning is "suitably conditioned to render it compatible with and protect the park" and, in that way, the park site will be protected from incompatible uses, as required by Goal 8 Policy 1. In my view, if the review task at hand is correctly identified—*viz.*, assessing whether the city's construction of Goal 8 Policy 1 is "inconsistent with the express language of the comprehensive plan," ORS 197.829(1)(a), and "plausibly accounts for [its] text and context," *Siporen v. City of Medford*, 349 Or 247, 262, 243 P3d 776 (2010)—the city's construction of Goal 8 Policy 1 is not implausible. Because LUBA was correct to conclude that the city's construction is not implausible, its order is not "unlawful in substance or procedure," ORS 197.850(9)(a), and I would therefore affirm it.[1] Consequently, I respectfully dissent.

Like LUBA, my assessment of the plausibility of the city's construction of Goal 8 Policy 1 turns on an examination of the operative terms of the policy, and I begin with whether the term "protected" is susceptible, in context, of the meaning that the city gives it. "Protect" is defined by the city's comprehensive plan to mean "Save or shield from loss, destruction, or injury or for future intended use." As the city sees it, there is park use and nonpark use; not all nonpark use is "incompatible use." Therefore, the city does not construe the term "protected" to be a prohibition against all nonpark uses in parks. Further, the city sees the definition of "protect" as anticipating the need to protect "future intended use," which includes both park and nonpark uses but, again, does not include incompatible uses. The city posits that, if the operative term "protected" were meant to prevent or prohibit *all* nonpark uses on existing park sites, then Goal 8 Policy 1 would say that. Instead, the policy refers to protection against "incompatible uses," which implies that parks are not protected against compatible uses. Hence, the policy can be understood to allow nonpark uses in parks so long as they are compatible with underlying park uses. I fail to find fault with the plausibility of that construction and, like LUBA, agree with the city that the term "protected" is

---

[1] I would reject petitioner's remaining assignments and subassignments of error without written discussion.

susceptible to meaning that public park sites are protected for public park use and, if the city decides that a portion of a park site should be used for a nonpark use, nonpark use is allowable so long as it is compatible with the underlying park use.

As for the term "incompatible uses," which is not defined in the comprehensive plan, the city views an affordable housing project, although a nonpark use, as compatible with the remainder of the rezoned tax lot and the balance of Morrison Park because the city set out conditional measures to ensure its compatibility. Those conditions are that the residential development permitted by the rezoning must (1) be affordable housing (2) be limited to only 2.76 acres of the tax lot that the city seeks to rezone, and (3) require construction of pedestrian and bicycle connections to other city parks and pathways through the remainder of the rezoned tax lot and Morrison Park. The city supports its view that those conditions ensure compatibility by relying on two other provisions in Goal 8, *viz.*, Policy 2, which provides that, "[w]hen feasible, recreational opportunities and park sites will be located so as to be accessible to a maximum number of people," and Policy 3, which provides that the "development of parks which are accessible by means of walking or bicycling is encouraged."

With those policies in mind, the city reasons that its "parks are supposed to be an amenity used by urban dwellers, and the population that city parks are supposed to serve includes low income residents, whose recreational opportunities are limited by an inability to afford other high cost options." And, although "the users of Morrison Park may change as a result of [the rezoning,] overall more people with limited means will be served by this urban park if they live adjacent to the remaining park space that will be integrated into the non-park use." Moreover, the city emphasizes that any housing development on the rezoned tax lot will be limited to 2.76 acres and that the affordable housing project would be integrated with the park to promote walking and bicycle use, which in turn would improve the park's accessibility and better serve the recreational needs of the city's residents and its visitors. I fail to see the implausibility of the city's view of "incompatible uses"—which rests on

the understanding that the proposed change to the park, although it decreases the park's size somewhat, will increase recreational use for a broader range of its citizens for whom recreational space has not historically been accessible. That construction is in keeping with Goal 8 of the comprehensive plan, which is to "satisfy the recreational needs of the citizens and visitors to the area."

Further, the city's construction of the term "incompatible uses" avoids the problem that we identified in *Crowley v. City of Hood River*, 294 Or App 240, 430 P3d 1113 (2018) (*Crowley I*). In *Crowley I*, the city asserted that Goal 8 Policy 1 applied only to incompatible uses on nearby properties and not to the park itself. We concluded that that construction was implausible because it placed limitations on the term "incompatible uses" where there were none. *Id.* at 247. Here, the city's conditions of the rezoning, which are neither categorical nor definitive, do not likewise limit the meaning of "incompatible uses." That is, the city's view that the limited residential use and park use can coexist on the same park site if the residential development satisfies Goal 8 and its policies is not a construction that narrows or limits the scope of the policy's applicability.

With that said, I turn to petitioner's argument that, because the city inserted qualifiers—"portion," "remainder," or "balance"—to the term "park site" several times in explaining its construction of Goal 8 Policy 1, the city's construction of the policy violates the injunction "not to insert what has been omitted," ORS 174.010, and the majority opinion's agreement with that argument when it says that the city's construction of the policy effectively rewrites it to mean that "*portions of* existing park sites will be protected from incompatible uses." 308 Or App at 53. There are two reasons why I find that view unavailing.

First, that view necessarily assumes that Goal 8 Policy 1 prohibits reduction of the entire area of an existing park site. However, neither the policy's express language nor any other provision in the comprehensive plan says that. And, because the meaning of "site" can refer to an entire area or to less than the entire area, it cannot be said that the "plain and natural reading" of "park site" is the

entire area of a park site. As LUBA explained in its order, "'site' is sometimes used in land use regulations to define the location or placement of particular development," and, therefore, "site" can refer to an area that is less than the entire area of a lot or parcel, or put differently, a portion of a lot or parcel. *See also Kamps-Hughes v. City of Eugene*, 305 Or App 224, 232, 470 P3d 429 (2020) (recognizing that the City of Eugene's posited meaning of "siting" could refer both to the placement of a particular type of building or facility within a larger area, such as one of the city's residential zones, or to placement within a smaller area like an individual lot). Additionally, if some nonpark uses are permitted so long as they are not incompatible uses, *see* 308 Or App at 54 n 3 (acknowledging that "some non-park uses of a particular portion of a park site could be compatible with park use on that particular portion"), I cannot imagine an instance where a nonpark use would not reduce the size of the park in some way. For example, adopting a provision to allow a bicycle or skate rental business to be established in Morrison Park would remove the portion of land dedicated to that use from use as park land while promoting the use of the balance of the park by people renting the skates and bicycles.

Second, there are analytical difficulties with applying ORS 174.010—the proscription "not to insert what has been omitted"[2]—to the task at hand here—reviewing, in accordance with ORS 197.829(1)(a), whether a city's construction of its policy is implausibly "inconsistent with the express language" of its comprehensive plan. It is to be expected that construction of a city's policy provision uses additional language—collected from logic, dictionaries, case

[2] ORS 174.010 provides, in part, that when we determine the meaning of a statute, our task is to "ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted." That proscription is part of the statutory-construction methodology set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), and *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), which we use when reviewing the plausibility of a city's construction of its land-use regulations. *Setniker v. Polk County*, 244 Or App 618, 633-34, 260 P3d 800, *rev den*, 351 Or 216 (2011). As I explain, reviewing the plausibility of a city's construction of its land-use regulations and engaging in the task of statutory construction, although similar endeavors, are different enough to caution that we should tread carefully when applying ORS 174.010 under a *Siporen* standard of review.

law, other provisions in the comprehensive plan, or the policy's enactment history. As LUBA has put it, "Any interpretation of ambiguous language necessarily restates or paraphrases the understood meaning of the text using different words than found in the text." *Estroff v. City of Dundee*, \_\_\_ Or LUBA \_\_\_, \_\_\_ (LUBA No. 2018-139, Feb 27, 2019) (slip op at 10). In this case, the city construes Goal 8 Policy 1 to mean that its purpose is to protect a park site from incompatible nonpark uses and not from all nonpark uses. As a matter of logic, a nonpark use cannot be a park use and must occupy some portion of the entire area of a park site. The city cannot therefore evade words like "portion" or "remainder" in the course of its construction and, when the proper level of deference is given to its construction, it is hazardous to rely on the no-insertion-of-terms principle when the operative terms of Goal 8 Policy 1 are susceptible to more than one meaning.

That is not to say that petitioner's arguments and the majority's conclusion would be incorrect were we to review the city's construction of Goal 8 Policy 1 for legal error. The plausibility of those views, however, is not the issue. The issue is whether the *city's construction is plausible*, and our assessment of the plausibility of the city's construction must be "highly deferential." *Mark Latham Excavation, Inc. v. Deschutes County*, 250 Or App 543, 555, 281 P3d 644 (2012). Accordingly, heeding what *Siporen* instructs, I respectfully dissent.